Donald F. WHITTIER, of New Sharon,
County of Franklin, and State of
Maine, Plaintiff,

v.

John W. GARDNER, Secretary of the De-
partment of Health, Education and
Welfare, Defendant.

Civ. No. 8–193.

United States District Court
D. Maine, S. D.

Jan. 26, 1967.

Joseph F. Holman, Farmington, Me., for plaintiff.

Lloyd P. LaFountain, U. S. Atty., Portland, Me., for defendant.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (1964), for review of a "final decision" of the Secretary of Health, Education and Welfare affirming the denial by a Social Security Administration hearing examiner of plaintiff's application for the establishment of a period of disability and for disability insurance benefits under the provisions of Sections 216(i) and 223 of the Act. 42 U.S.C. §§ 416(i), 423 (1964). It is admitted that plaintiff has exhausted his administrative remedies. In accordance with the statute, the Secretary has filed as part of his answer a certified copy of the administrative record, including a transcript of the evidence upon which the findings and decision are based. Both parties have moved for summary judgment, and have filed briefs and presented oral argument in support of their motions.

The prescribed standard of this Court's review is found in Section 205(g) of the Act, which provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." Substantial evidence has been consistently defined as more than a scintilla, but less than a preponderance. "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole." Celebrezze v. Bolas, 316 F.2d 498, 501 (8th Cir. 1963) ; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). The function of the courts is to determine "whether the administrative findings are adequate in law and premised upon substantial record evidence. Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." Rodriguez v. Celebrezze, 349 F.2d 494, 495–496 (1st Cir. 1965). In short, this Court is not to try the case de novo, and if the findings of the Secretary are supported by substantial evidence, the Court is bound to accept them. Celebrezze v. Warren, 339 F.2d 833, 837 (10th Cir. 1964) ; Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962). Nevertheless, it is said that the courts should not "abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational," and to insure that the Secretary has not acted "arbitrarily or capriciously." Thomas v. Celebrezze, supra 331 F.2d at 543; Morton v. Gardner, 257 F.Supp. 67, 70 (S.D.W.Va.1966).

The record here discloses that plaintiff was born on December 6, 1906; that he left school before completing the 10th grade; and that he is married and now lives at home in New Sharon, Maine, with his wife, his 16-year-old daughter and his mother-in-law. His work experience has been limited to jobs of a semi-skilled or unskilled nature, usually involving more than average physical exertion. Brought up on a farm, he has been a farmer, a lumberman, a route salesman for household products and a lathe operator in a factory.

As a result of a fall in 1944, plaintiff required hospitalization and a spinal fusion in his lower back in 1945. He returned to work after about a year and a half and was fairly regularly employed until April 11, 1963 when a lathe on which he was working "kicked back" and sent him reeling backwards, striking

the left side of his lower back against another lathe. On July 16, 1963 he was forced to stop work because the pain and discomfort in his lower back was such that he could not continue as a lathe operator.

On January 2, 1964 plaintiff filed his application for a period of disability and for disability insurance benefits, alleging the onset of a disability within the meaning of the Act on July 16, 1963. The Social Security Administration denied this application on March 5, 1964, and upon plaintiff's request for reconsideration, affirmed its denial on January 27, 1965. Plaintiff thereupon requested a hearing before a hearing examiner, and a hearing was held on May 12, 1965, at which plaintiff offered his own testimony, the testimony of relatives and neighbors, and the testimony or written reports of seven doctors who had examined him subsequent to his April 1963 accident. Upon the record thus constituted, the hearing examiner rendered his decision on July 23, 1965, holding that plaintiff was not disabled within the meaning of the Act.[1] On August 20, 1965, the Appeals Council of the Social Security Administration denied plaintiff's request for a full review of the hearing examiner's decision, whereupon the decision of the hearing examiner became the "final decision" of the Secretary, subject to judicial review.

Plaintiff's complaint is of incapacitating pain emanating from the area of the fusion in his lower back and radiating across his left hip down his left leg and into his groin. According to him, he experiences this pain as soon as he gets up in the morning, and he finds it necessary to take pain-killing medication regularly, usually every two hours. Any type of activity, such as coughing, sneezing, reaching, stretching, walking, or even sitting in a chair, brings on the pain. He has not worked since July 16, 1963, and his normal day consists of rising in the morning, eating breakfast and often returning to bed for a few hours. In the afternoon he may walk a short distance to visit a neighbor. His rest at night is broken by pain, and he often gets up to take his medication. Around the home he is able to do nothing in the way of household chores, and he is unable to drive a car without acute discomfort. Since stopping work in July 1963 he has had no regular income and has had to rely on local welfare assistance for his support and for the support of his family.

Plaintiff's own testimony as to his condition was corroborated by his wife, his brother, a selectman of the town of New Sharon, a local clergyman, and a neighbor. They testified that they had observed plaintiff in acute pain; that he was a hard-working man and a man of integrity; and that since his 1963 back injury he had made several attempts to work, but had been unable to do so.

The medical evidence submitted to the hearing examiner may be summarized as follows: Dr. Philip B. Chase, a general practitioner in Farmington, examined plaintiff on May 5 and 10, 1963, shortly after his accident with the lathe. He stated that plaintiff was complaining of severe pain and rigidity in his lower back. Dr. Chase diagnosed plaintiff's problem as spondylolisthesis[2] and secondary arthritis in the area of his old spinal fusion. He felt that plaintiff's condition was getting progressively worse. In his opinion plaintiff was unable to work, and he recommended a complete orthopedic evaluation.

On October 28, 1963, plaintiff was examined by Dr. Daniel A. Rock, a Lewiston neurologist. Dr. Rock found "marked spondylolisthesis," but he

---

1. The hearing examiner found that plaintiff meets the earnings requirements of Sections 216(i) and 223(c) of the Act, 42 U.S.C. §§ 416(i), 423(c) (1964) during the effective period of his application and that he will continue to meet such requirements through June 30, 1968. This finding is not challenged.

2. Spondylolisthesis is a forward displacement of one vertebra over another. Dorland's Illustrated Medical Dictionary (23d ed. 1957).

could find "no features to indicate the presence of nerve root compression due to a protruding intervertebral disc." He concluded that the problem was an orthopedic one.

Dr. Walter G. Dixon, an orthopedic surgeon in Norway, Maine, to whom plaintiff was referred by Dr. Rock, examined plaintiff in late October or early November 1963. At that time plaintiff was complaining of pain radiating down the back of his left thigh into his left leg, and numbness in the groin. Dr. Dixon found moderately severe limitation of motion of the lower back, and limitation of other motions. X rays "revealed a fusion at the lumbo-sacral junction, and a fused vertebra above, which had a questionable fracture." Dr. Dixon's opinion was that "there is a possibility that this man had a fracture through the old graft, which may be the causative factor behind his trouble." He referred plaintiff to the orthopedic clinic of the Central Maine General Hospital at Lewiston for an orthopedic evaluation.

On November 14, 1963 plaintiff was examined at the Lewiston orthopedic clinic by a Dr. Archambault, who reported that plaintiff "had an extremely severe spondylolisthesis and he has a solid fusion between L5 and S1, but there appears to be a pseudarthrosis[3] in the fusion between L4 and L5." Dr. Archambault concluded that "clinically there are no objective signs of disability * * *." He reported that plaintiff did not appear to be in distress at the time,[4] and advised him to return to work.

Plaintiff was also seen on three occasions by Dr. Hays G. Bowne, a general practitioner in Farmington, who was the only doctor to testify at the hearing. He first saw plaintiff on September 6, 1963, the only occasion upon which he examined him with respect to his back problem. Dr. Bowne testified that plaintiff was complaining of much back pain, even at rest, and had a slow painful gait, but he could find no definite muscle spasm or deformity in the back.[5] He diagnosed plaintiff's problem as arthritis of the lumbar spine, which he further described at the hearing as degenerative osteoarthritis. On October 13, 1963, Dr. Bowne was called to plaintiff's home because of a sudden onset of chest pains, faintness and sweating. He gave plaintiff an injection of Demarol, which appeared to relieve the condition. The cause was never definitely determined, but Dr. Bowne expressed the opinion that the episode "was largely of tension origin, possibly of psychic origin, due to possibly a prolonged spell of pain * * *." Dr. Bowne last saw plaintiff on April 3, 1964, when plaintiff wanted his heart and blood pressure checked. These were found to be normal.

Dr. Bowne's overall opinion was that petitioner could do "nothing significant" in the way of work. He felt that "probably he is as much disabled by his emotional reactions to his injury or his accident or his arthritis as he is to the arthritis itself," but that "this is no less disabling." [6]

At the request of the Maine Vocational Rehabilitation Division, plaintiff was ex-

---

3. Pseudarthrosis is a false joint, as that sometimes seen following a fracture. Dorland's Illustrated Medical Dictionary (23d ed. 1957).

4. Plaintiff testified that he had taken his pain-killing medication immediately prior to Dr. Archambault's examination.

5. Dr. Bowne did not have the benefit of any x rays or x-ray reports.

6. Under questioning by the hearing examiner, Dr. Bowne further testified that plaintiff "may not be physically, physiologically, and anatomically disabled as he is overall in terms of not only his physiology and anatomy of his back but his reaction to it." He conceded that quite possibly many people with as severe problems as plaintiff would be able to continue working because of their different emotional makeup, but he insisted that plaintiff was in fact disabled.

amined by Dr. Allan J. Stinchfield, an orthopedic surgeon in Augusta, on October 21, 1964. Dr. Stinchfield found that plaintiff had some muscular tenderness in his left back and that his motions were "slow and guarded." His reported impressions were: (1) spine fusion of L4, 5 and S1; (2) possible bilateral compressions of L; (3) marked anxiety state of psychosomatic overlay; (4) osteoarthritis with pain; and (5) possible pseudarthrosis at L4, 5. The report from the radiologist, Dr. J. Chen of the Thayer Hospital in Waterville, made in conjunction with Dr. Stinchfield's examination, stated:

> Examination including flexion and extension views demonstrate spinal fusion with considerable bony sclerosis in the vertebral arch of L4 and L5 and S1. There appears to be motion between L4 and L5 on the lateral flexion views. No evidence of spondylolithesis is demonstrated.

Upon this evidence, the hearing examiner, as has been noted, concluded that plaintiff is not disabled within the meaning of the Act. Having reviewed with care the entire record, this Court is of the view that the determination of the hearing examiner is not supported by substantial evidence, and must be reversed.

For purposes relevant here, Sections 216(i) and 223 of the Act define "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental [7] impairment which can be expected to result in death or to be of long-continued or indefinite duration * * *." As the court pointed out in Thomas v. Celebrezze, supra 331 F.2d at 545, "[t]here really are two steps to a finding of disability: first, a finding of a 'medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration' and, second, a finding that the impairment in fact causes an inability to 'engage in any substantial gainful activity * * *.' "

In regard to the first step, that is, the determination of whether a physical or mental impairment exists, an objective test must be applied, for the statute requires the finding of a "medically determinable" impairment. But in regard to the second step, that is, the determination of whether the medically determinable impairment results in an inability to work, the test is subjective. Thomas v. Celebrezze, supra at 545; Celebrezze v. Warren, supra 339 F.2d at 838; Dvorak v. Celebrezze, 345 F.2d 894, 895 (10th Cir. 1965); Ber v. Celebrezze, 332 F.2d 293, 298–299 (2d Cir. 1964); Hayes v. Celebrezze, 311 F.2d 648, 654 (5th Cir. 1963); Page v. Celebrezze, 311 F.2d 757, 762–763 (5th Cir. 1963); Morton v. Gardner, supra 257 F.Supp. at 73. "[T]he abstract 'average' man is not the criterion. The inquiry must be directed to the particular claimant; not to people in general or even claimants in general." Thomas v. Celebrezze, supra 331 F.2d at 545. Although a medically determinable impairment must be found to exist, in determining the effect of the impairment on the claimant, "the emphasis on the individual requires consideration of subjective reactions." Dvorak v. Celebrezze, supra 345 F.2d at 895. Indeed, while such a case is not presented here, "even pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits".[8]

---

7. No challenge is made of the examiner's finding that the plaintiff has failed to establish a mental impairment because of his refusal to be examined by a psychiatrist.

8. Ber v. Celebreeze, supra 332 F.2d at 299. The court further observed on the same page that,

> it is common knowledge that physical phenomena of a debilitative nature may

The flaw in the hearing examiner's conclusion lies in his failure to differentiate between the two questions which are involved in determining whether a disability exists within the meaning of the Act, and in his apparent unawareness that the second question requires a subjective inquiry. Thus, the hearing examiner stated in his evaluation of the medical evidence that "the basis for a finding of 'disability' must be a *medically determinable* one." (Emphasis in original.[9]) In applying this erroneous standard, he based his determination that plaintiff is not disabled upon his finding that "no evidence has been submitted pointing to the presence of any *organic deficit* which would adversely affect claimant's ability to engage in substantial gainful activity." (Emphasis supplied.) The error resulting from the examiner's misapprehension of the applicable standard is further demonstrated by his ultimate conclusion that "in the absence of objective findings showing claimant's ability to move about, manipulate, see, hear, reason, and understand, it could not be said his activities have been restricted to an unusual degree." The examiner plainly erred in so grounding his decision.

The uncontradicted evidence is that plaintiff has a substantial physical impairment. While the doctors are in disagreement as to the precise nature of his problem, all confirm that he has undergone some degree of arthritic change and is experiencing pain in the area of the spinal fusion in his lumbar spine. Nor is there any suggestion that this condition will improve. In short, the objective medical findings clearly show that plaintiff has a medically determinable physical impairment, which will either continue or become progressively worse.

The evidence of the effect of plaintiff's physical impairment on his ability to engage in substantial gainful employment is equally conclusive. As has been noted, Dr. Chase stated that plaintiff was "unable to work," and Dr. Bowne said that he could do "nothing significant" in the way of work. No doctor, with the possible exception of Dr. Archambault,[10] said

work differing degrees of hardship on different persons; and, too, that even where the amount of hardship experienced is roughly the same, persons subjected to it will bear up under it differently because they possess relatively higher or lower thresholds of resistance to the pain the debilitation generates. What one human being may be able to tolerate as an uncomfortable but bearable burden may constitute for another human being a degree of pain so unbearable as to subject him to unrelenting misery of the worst sort.

9. The examiner emphasized his point by quoting from the Social Security Administration Regulations, 20 C.F.R. § 404.1510, as follows:

In order to establish that a medically determinable physical or mental impairment * * * is present there should be evidence that medically discernible anatomical, physiological, biochemical or psychological aberrations exist. Allegations of inability to work as a result of an impairment such as dyspnea (shortness of breath), pain, lack of musculoskeletal function, decreased vision or hearing, decreased memory, etc., should be shown to result from structural, physiological or psychological changes which can be identified by the use of clinical and laboratory diagnostic techniques. *An alleged impairment is medically determinable only if it can be verified by the use of clinical and laboratory diagnostic techniques.* (Emphasis supplied by examiner.)

While it is evident that this regulation is directed to the determination of whether a "medically determinable physical or mental impairment" exists, it is apparent that the examiner misconstrued it to require the substantiation by clinical or laboratory findings of a claim that such an impairment results in an inability to work. Cf. Page v. Celebrezze, supra 311 F.2d at 762-763.

10. Dr. Archambault, who found that "clinically there are no objective signs of *disability*" and advised plaintiff to return to work, did not discuss plaintiff's complaints of pain, and the record does not show whether he advised plaintiff to attempt work for therapeutic reasons or because he felt plaintiff was able to do so. In any event, Dr. Archambault would stand alone in the opinion that plaintiff was capable of working. Apart from the distinction between a medical

that plaintiff was able to work. Significantly, none of the examining doctors questioned that plaintiff was experiencing severe pain, and those doctors who expressed an opinion agreed that he was unable to work because of the effect of this pain upon him. True Dr. Stinchfield found "a marked anxiety state of psychosomatic overlay," and Dr. Bowne testified that plaintiff was "as much disabled by his emotional reactions to his injury or his accident or his arthritis as he is to the arthritis itself." But as Dr. Bowne observed, "this is no less disabling."

 The hearing examiner did not expressly state that he doubted the truth of plaintiff's complaints of pain, nor did he deal with the medical evidence as to the extent of his pain and its effect upon him. Thus, it is difficult to determine whether the examiner actually reached the critical question of whether plaintiff was suffering pain which was so severe to him as to prevent him working. But even if the examiner did reach this question and determined that plaintiff's pain was not such as to disable him, such a finding lacks substantial evidentiary support. The record contains no evidence indicating that plaintiff is a malingerer, and the uncontroverted lay and medical evidence is to the effect that plaintiff is in fact experiencing pain as a result of his back condition which, whatever its effect might be on a "normal" person, is so severe in its effect upon him as to make it impossible for him to engage in gainful employment.

Counsel have cited a number of cases in which claims of disability have been either granted or denied, but these decision are of little help because each case must be decided on its particular facts. It is sufficient to observe that in those cases which the Court views as most closely analogous to the case at bar, relief was granted. See Ber v. Celebrezze, supra; Morton v. Gardner, supra; and Woolridge v. Celebrezze, 214

finding of "impairment" and a medical opinion on "disability," the entire record, including all the other medical evidence,

F.Supp. 686 (S.D.W.Va.1963). On the other hand, the pain which this record shows that plaintiff is experiencing is wholly different from the minor discomfort disclosed in Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960), upon which the examiner chiefly relied. Similarly, the factual situation present here is clearly distinguishable from those present in Grover v. Celebrezze, 246 F.Supp. 914 (D.Me.1965) and Fleurant v. Celebrezze, 213 F.Supp. 817 (D.Me.1963), in which the claims of disability were rejected by this Court.

In the view of this Court, the evidence in this case overwhelmingly shows that plaintiff is disabled within the meaning of the Act, and the Secretary's decision to the contrary is not supported by substantial evidence. Accordingly, plaintiff's motion for summary judgment is granted; defendant's motion for summary judgment is denied; and this case is remanded to the Secretary with directions that plaintiff be granted a period of disability and disability insurance benefits in accordance with the views herein expressed.

compels a contrary conclusion. Cf. Thomas v. Celebrezze, supra 331 F.2d at 546.