**William L. SALE**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.**

**No. EV 60–C–65.**

United States District Court
S. D. Indiana,
Evansville Division.

Aug. 27, 1962.

Sydney L. Berger, Evansville, Ind., for William L. Sale.

Richard P. Stein, U. S. Atty., Indianapolis, Ind., for Celebrezze.

DILLIN, District Judge.

This is an action by the plaintiff, William L. Sale, to review a final decision of the Secretary of Health, Education and Welfare, denying the plaintiff's application for a period of disability and disability benefits, as authorized by the Social Security Act, as amended 42 U.S. C.A. §§ 416(i), 423.

The cause was originally filed July 27, 1960, at a time when Arthur S. Flemming was the Secretary. Thereafter, Abraham Ribicoff was substituted as the party defendant. The Court takes judicial notice of the fact that Anthony J. Celebrezze has succeeded the said Abraham Ribicoff as Secretary of Health, Education and Welfare, and now, on its own motion, substitutes the said Anthony J. Celebrezze as defendant herein, in his official capacity as aforesaid.

This Court has jurisdiction of the action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405 (g). It has been submitted upon the transcript of the record, and cross motions for summary judgment filed by each of the parties.

The record discloses that the plaintiff was born September 3, 1905, and received only an eighth grade education. He has never been married. His only substantial employment has been as an assembly-line worker from 1942 to 1957. He suffers primarily from arteriosclerotic heart disease, with associated myocardial ischemia and angina pectoris. He has dyspnea on slight exertion. These conditions have persisted since 1957, and have required two periods of hospitalization of approximately 30 days each within such time. His symptoms may well be amplified by an anxiety neurosis. He also has a bilateral inguinal hernia, Dupuytren's contractures in both hands, and a previous history of acute gastritis, acute hepatitis, and polyneuritis of the lower extremities.

The physician who has treated plaintiff regularly since 1957 and the physicians who treated him on several occasions in 1958 and 1959 as a township poor relief patient are in agreement that his heart condition is permanent and that it disables him from performing any substantial gainful activity.

Plaintiff has had two examinations by medical consultants selected by the Bureau. The first such examination was had on or about September 29, 1958. The doctor making such examination did not find objective evidence of angina, but did find a considerable degree of degenerate change in the aorta, hypertensive vascular disease and hyperventilation syndrome. He felt that plaintiff's symptoms had a psychogenic aspect. He did not give an opinion as to plaintiff's degree of disablement, but suggested that a further check be made with plaintiff's regular physician as to his response to treatment.

Plaintiff's second examination had at the request of the Bureau was had on or about December 7, 1959. In the opinion of the physician making such examination plaintiff has coronary insufficiency, with angina pectoris found objectively by electrocardiogram. The condition was characterized as mild. In addition, the physician's opinion was that there was a heavy element of anxiety neurosis which was "rather disabling." The physician stated that he thought plaintiff could be rehabilitated for some type of light work, despite his angina pectoris, and that he should be able to be rehabilitated from his "rather severe" anxiety neurosis. He stated that he could not recommend that plaintiff be granted Social Security benefits, but later qualified this remark by stating that plaintiff's attending physician, whom he stated to be competent and adequately trained in the field of internal medicine, would be in a substantially better position than himself to make an evaluation.

The last examination had by such attending physician was on October 2, 1959, and the report states "Mr. Sale still has by symptom, severe anginal pain with even the slightest exertion and by the electrocardiogram definite evidence of myocardial ischemia which would substantiate his clinical history. It is my firm belief and knowledge that Mr. Sale is unable to engage in any substantial gainful activity." This last examination and report of the attending physician also serves to meet the suggestion of the first Bureau appointed physician that inquiry be made of the attending physician as to plaintiff's response to treatment. Obviously, the response has been nil.

█ It appears to the Court that the medical testimony supporting plaintiff's position is consistent, unequivocal, and based on observations made in treating plaintiff over an extended period of time. The expert opinions of plaintiff's physicians as to his disability and inability to engage in any substantial, gainful employment are binding upon the referee if not controverted by substantial evidence to the contrary. Teeter v. Flemming

(7th Cir., 1959) 270 F.2d 871, 77 A.L.R. 2d 636.

▮ The Court finds that the evidence contained in the statements of the Bureau appointed physicians does not substantially controvert plaintiff's evidence, but rather is of a tentative and nebulous nature, referring back to plaintiff's attending physician, in each instance, for a final conclusion. If anything, the reports of such examining physicians make out an additional ground of disablement in that they indicate that plaintiff is suffering from a severe and disabling anxiety neurosis which in itself requires "rehabilitation." The Court knows of no medical care calculated to relieve a severe neurosis save extended psychiatric treatment, which would obviously be beyond the purse of a person who has been existing on township poor relief since 1958.

For the reasons stated, the motion of the plaintiff for summary judgment is sustained, and that of the defendant is overruled.

The Court cannot refrain from expressing its concern regarding certain matters appearing from the record, which it hopes are not indicative of the general policies of the Bureau in its handling of cases of this type.

First of all, the Court infers from affidavits contained in the record that a field representative of the Bureau interviewed certain lay witnesses who divulged information favorable to plaintiff, and that such representative failed to take written statements from such witnesses for incorporation in the record. Statements from such witnesses were later taken by the plaintiff.

The Bureau has a duty to protect the funds which it administers against unjustifiable claims, but it has also a correlative duty to allow such claims as may appear to be proper upon a consideration of *all* of the material evidence. It must be truly impartial, particularly when it is considered that the provisions of the Act relating to attorneys' fees make it most difficult for claimants to obtain legal representation.

This of course means that representatives of the Bureau should in no event form a preconceived opinion as to the merits of a claimant's case, nor to tailor the file to fit such preconceived opinion. Rather, material evidence of any and all witnesses known to the Bureau should be scrupulously reduced to statement form in a fair and impartial manner.

Secondly, the opinion of the Appeals Council expresses outrage at the fact that plaintiff's counsel obtained a supplementary statement directly from a physician appointed by the Bureau to examine plaintiff, without channeling his request through the Bureau. (The Bureau's field representative had previously done precisely the same thing by contacting directly a witness whose statement had been filed by plaintiff, and obtaining a subsequent statement somewhat in conflict with the one first filed. The Appeals Council not only did not criticize this procedure, but on the contrary placed special reliance on the second statement thus obtained).

This Court does not criticize either plaintiff's counsel or the field representative. Apparently claims before the Bureau are to be determined largely on the basis of a file of paper. If so, the taking of supplementary or impeaching statements would appear to be a logical substitute for cross-examination, albeit a poor one.

The contrasting positions of the Appeals Council above noted imply a climate in which an attorney doing his job is resented as an outsider interfering with the bureaucratic process, while similar activity by a member of the in-group is found to be commendable. The Court wonders whether such climate, if it exists, is not indicative of bureaucratic anxiety neurosis.

▮ We emphasize again that it is not the function of those involved in the administration of the Act to ˙ace themselves in a partisan positive adverse to claimants, but to render justice fairly

and impartially, and in accordance with the spirit and intent of the Act. Surely no impartial arbiter should ever resent the obtaining and presentation of evidence calculated to afford a more accurate determination of the merits of a controversy.

The Clerk will enter judgment for the plaintiff in accordance with the above rulings on the respective motions of the parties for summary judgment, reversing the decision of the Secretary and remanding this cause for allowance of plaintiff's claim