Frank H. ABEL

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**No. CA 3–7039–C.**

United States District Court, N. D. Texas, Dallas Division.

Sept. 20, 1974.

Harold J. Dollinger, Tygrett & Dollinger, Dallas, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), this action seeks a review of the final decision rendered by the Secretary of Health, Education and Welfare denying the plaintiff's claim for a period of disability (disability freeze) and for monthly insurance benefits.[1] Upon consideration of the issue before it, of whether or not the Hearing Examiner's adverse decision is properly supported by substantial evidence, this court finds that the evidence submitted at the hearing disproves any finding of substantiality. Accordingly, a finding is made for the claimant, Abel.

A review of the multitudinous steps taken by Mr. Abel to reach this stage of proceedings clearly indicates the mental disability under which he is and has been operating and for which he claims payment. Altogether, the claimant has applied for both types of disability coverage—physical and mental—under 42 U.S.C. § 423. His first application, filed on January 11, 1966, alleged a physical incapacity involving his lower back. His second application was filed on November 30, 1967, and sought payments upon the basis of his mental impairment.

A history of back ailments led to Mr. Abel's admission to Baylor Hospital in January, 1964, for performance of a spinal fusion necessary to stabilize his lower back. The successful operation left Abel with a 15% permanently partially disabled condition.

■ Over the ensuing three or four years, Mr. Abel sought out numerous doctors for their diagnosis and treatment. Apparently, he felt that his back condition hadn't been fully corrected. In spite of Abel's constant worry, no neurological defect in his back was ever discovered. Consequently, Mr. Abel's first claim under a physical disability theory was denied by a Hearing Exam-

---

1. 42 U.S.C. §§ 416(j), 423.

iner on January 11, 1966, and later affirmed by the Northern District Court of Texas on January 23, 1968. That judgment is, therefore, res judicata, insofar as a physical disability claim is concerned. Nevertheless, it doesn't affect our consideration of his mental state except to add another dimension of emotional strain under which he suffered.

The plaintiff's present mental disability claim is grounded upon his psychological reactions to the conditions of his lower back. In the claimant's mind, if not in actuality, the condition of his back worsened in 1967 when he was involved in an automobile accident. Examination and X-rays taken that year, however, produced no diagnosis of any newly developed back problems. Unsatisfied, Abel carried his case to Dr. Halley, who in February, 1968, diagnosed some movement in the area of claimant's prior spinal fusion. He recommended a second fusion attempt but stated in a letter that he believed "this patient to be in a very difficult situation primarily because of his attitude." As a result, he suggested postponement of surgery until Abel's mental state improved significantly. Eventually, the second operation was performed, healing begun, and Abel's returning back home.

Notwithstanding this apparent improvement of Abel's back in 1968, Abel's mental condition took a dramatic turn for the worse until finally he was hospitalized by his wife on August 11, 1968, because of an attempted suicide and extreme depression. His depression lightened somewhat during his hospital stay yet his returning to work appeared highly unlikely due to his lack of "adult adjustment". As a specialist in psychiatry and neurology, Dr. Weisz analyzed Mr. Abel's deep depression in a May, 1969, report on the basis of three contributing factors. First, the fact of his second back operation and its post-operative effects. Second, a feeling by Abel that he was entitled to Social Security benefits for his back disability claim since, in his mind, the second operation proved his inability to work over the intervening years. And finally, the strain connected with enduring the back pain and the amount of hospitalized time.

Another aspect of Abel's depression came to the forefront through his examination by Dr. R. E. Simmons on May 26, 1969. He diagnosed the claimant as being severely and chronically depressed, a condition he thought resulted from Abel's concern over not being able to work and provide financial security for his family, never minding his ability to do anything constructive. Having seen no improvement in the claimant's mental condition from 1969 until June, 1972, he concluded that even more "intensive treatment would probably not result in sufficient improvement in the depressive reaction to enable Mr. Abel's to engage in substantial gainful employment." In addition to psychological counseling Dr. Simmons also prescribed medical treatment for Abel's ulcers and general debility over that stretch of time.

The effort was apparently of little avail since Abel's condition worsened in 1972 until the point of his being admitted on July 27 to the V.A. Hospital in Waco, Texas, with multiple somatic complaints, nervousness, and a habit of habitual alcoholic intake. Although he improved to the point of discharge on October 13, 1972, prognosis was nevertheless guarded since his depressive condition was characterized as schizophrenic coupled with excessive drinking.

As a result of his imagined or real mental problems, Abel initiated a claim for mental disability benefits before the H.E.W. As already mentioned, a de novo hearing limited only to his claim of mental impairment was conducted before an Examiner on June 12, 1972. At that hearing, two reports—one by Dr. Simmons, as earlier mentioned in part, and one by Dr. B. A. Goodwin, a board-certified psychiatrist—were received into evidence in support of plaintiff's claim. Goodwin's report briefly traced the personal life as well as psychiatric history

of Abel. Dr. Goodwin's diagnosis agreed with Dr. Weisz' earlier one in that claimant's not having worked at a continuous good paying job since 1964 produced his severe depression. His existence largely centered about his home where he often regularly took medicine for his ulcers and nervous condition, especially when he suffered from the "shakes". This depressive and excessively nervous condition prevented his re-employment as a draftsman, his only skilled position. As for other light employment, his having lost 23 pounds from 148 to 125 in three months of 1968 as a janitor in a Y.M.C.A. cast serious doubt on the possibility.

The government produced only one witness at the hearing to buttress their position of denial of benefits. As a vocational expert, he generally testified about the availability of jobs of the type that Mr. Abel could perform. The thrust of his testimony was largely undermined on cross-examination, when he testified that assuming Dr. Simmons' evaluation of Abel's severely depressed state was correct then the claimant "would not be able to work . . ."

With this background information in mind, we now come to review the Hearing Examiner's decision to deny Abel's claim for mental disability payments.

■ The Social Security Act, 42 U.S.C. § 423, as amended in 1968, provides for disability insurance payments for an individual under the age of 65 who has made an application for such benefits and is in fact under a disability. The term "disability", as defined in 42 U.S.C. 423, means:

> (a) [an] inability to engage in any substantial gainful activity by reason of any medically determin-

able physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

The plaintiff under the mental disability provision of the Social Security Act has the burden of proving that he is entitled to such benefit. Whitt v. Gardner, 389 F.2d 906 (5th Cir. 1968). In the instant case, Mr. Abel made out a prima facie case[2] of his "mental impairment" disability through the introduction of the reports and testimony of Doctors Simmons, Weisz, and Goodwin, along with a recitation of his own personal medical history.

■ In this court's mind, the key to this case lies with the medical evidence introduced at the hearing. In deciding to deny the plaintiff's claim, the Hearing Examiner either disbelieved this evidence or ignored it. The implication drawn from his conclusions is that this evidence was not "medically acceptable." Perhaps the medical testimony and reports could be characterized as "subjective medical evidence" in the sense that they were grounded upon the doctors' casual office exposure to Abel instead of through a series of scientific tests and calculated observations. But insofar as the Fifth Circuit is concerned, "subjective medical evidence" from qualified practitioners is admissible and significant in determining disability under the Social Security Act. Whitt, supra, at 909. Therefore, the Examiner's following statements as regards Drs. Simmons and Goodwin are in error:

> The opinion of Dr. Simmons exceeds the medical purview of the physician's expert knowledge because it necessarily includes consideration of factors ex-

---

2. 42 U.S.C. § 423(d)(3) & (5) act together to establish a minimum required showing by the claimant:

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic technique.

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

trinsic to his professional training. The statements are not revealed to have been based upon a knowledge and consideration of all the factors involved in a diagnosis of such condition.

The Hearing Examiner must conclude that the opinion of the physician, expressed so remotely from the period under consideration and without benefit of an adequate record of claimant's activities, medical treatment and medical examination . . . was not based upon sound medical judgment and must therefore be rejected.

The transcript of Mr. Abel's case clearly indicates that Doctors Simmons and Goodwin did indeed have sufficient and complete knowledge of claimant's medical history at the time of making their medical judgments.

Not only does this court deem that the medical evidence introduced at the hearing was "medically acceptable", but it also notes that there is no need for it to reject any conflicting medical evidence proffered by the government since none exists. Stillwell v. Cohen, 411 F.2d 574, 576 (5th Cir. 1969). The only evidence introduced to controvert the plaintiff's claim was the testimony of the vocational expert. In full context, the expert's testimony was of little effect, principally because his non-professional background and lack of any updated knowledge of Abel's mental condition prevented any meaningful conclusions on his part about Abel's ability to work.

■ The position of the Hearing Examiner is that of a balancer of facts. He is not to determine legal standards by which medical evidence is arbitrarily judged to be true or untrue, relevant or irrelevant. In making his decision to deny benefits to Mr. Abel, the Hearing Examiner failed to fairly consider the uncontroverted opinions of competent physicians. This refusal to believe uncontroverted medical evidence, which effect is to superimpose a lay judgment upon a professional one, is something

the Examiner as well as the District Courts are prohibited from doing.

■ This court also finds that Mr. Abel has fully established his mental impairment, based upon his psychotic yearning to receive disability payments once he felt them improperly denied him; his "depressed reactions" to his inability to provide for his family; and his nervous, ulcerous condition produced in part by self-imposed pressures. Their total effect was to render Abel mentally unfit even for sedentary work. The Hearing Examiner's findings are, therefore, reversed and remanded according to the judgment accompanying this opinion.