Dewey RAYBORN, Plaintiff,

v.

Caspar WEINBERGER, Secretary, Department of Health, Education and Welfare, Defendant.

No. H 74-80.

United States District Court,
N. D. Indiana,
Hammond Division.

April 14, 1975.

David P. Matsey, Legal Aid Society, Gary, Ind., for plaintiff.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This is an action brought pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for a review of a final decision of the United States Secretary of Health, Education and Welfare that the plaintiff was not entitled to a period of disability or to disability insurance benefits under Sections 216 (i) and 223(d)(1), 42 U.S.C.A. §§ 416 (i)(1) and 423(d)(1).

The plaintiff filed his application for disability benefits on December 9, 1971, wherein he claims that he became unable to work commencing September 18, 1971. His application was initially denied on May 2, 1972. His request for reconsideration was denied on February 27, 1973. He then requested and was granted a hearing before an Administrative Law Judge, which hearing was held in Chicago, Illinois on August 20, 1973. The Administrative Law Judge entered his finding and decision on August 30, 1973 that the claimant was not entitled to a period of disability or to disability insurance benefits under §§ 216(i) and 223 respectively of the Social Security Act. A request for a review by the Appeals Council was filed by the claimant on September 7, 1973 and the request was denied by the Appeals Council on January 3, 1974. The plaintiff, by counsel, sought and was granted a first extension of time to commence a civil action for judicial review. A second extension of time to commence civil action was granted by the Appeals Council. All final administrative remedies having been exhausted, the claimant then filed this action for judicial review on October 12, 1973. This case is now before the Court on cross-motions for summary judgment.

The issue before the Court is whether or not the final decision of the Secretary is supported by substantial evidence.

The plaintiff was born in Humbolt, Kansas, on September 19, 1928. He weighs about 180–190 pounds and is 5 feet 6 inches tall. He is married and lives with his disabled wife and four year old child at 4401 Central Avenue, East Gary, Indiana. The record shows that he has an 8th grade education. Numerous medical reports are contained in the record. The claimant and his mother-in-law, Pauline Wilson, testified at the administrative hearing.

Dr. Crise reported that he first saw the claimant on November 18, 1967 for an ulceration on the opening of Wharton's duct. The remainder of the observations were within normal ranges. On November 20, 1967 the duct was reported as okay. He was seen on March 11, 1969 at Mercy Hospital and was treated for injuries from an automobile accident. A skull X-ray was taken and he was released. His blood pressure was 130/88. On March 14, 1969 he reported he was feeling better. He was seen again on December 27, 1969 with a swollen ankle and a lump and was put on medication. There was much less inflammation revealed on January 2, 1970. The lesion was excised from the top of the left foot and a specimen was sent to lab for a biopsy. Healing appeared okay on January 23, 1970. Fluid in the operative area was revealed on February 6, 1970. He was seen on February 20, 1970 and still had "quite a fibrous nodule". The pathology report of the foot tissue specimen indicated nonspecific chronic inflammation, slight, with nodular fibrosis. An X-ray taken on November 17, 1967 revealed an essentially normal chest.

Dr. Crise diagnosed the claimant's condition on March 29, 1972 as irritation, depression and poor coordination. He found no evidence of cervical or lumbar nerve root compression or paravertebral muscle spasm.

Dr. Kilgore conducted a psychological examination on November 27, 1972. He found that the claimant's full scale I.Q. was 103. The Bender Gestalt Z score results indicated that the claimant was badly in need of psychiatric help. Line drawing tremors suggested pent up aggression. He found fairly conclusive evidence of cortical deficits. He found little ego strength, easily spotted as indication of extremely ill individuals in poor contact. The Rorschach showed the existence of anxiety affectional needs. It showed a weakness in reality testing representing a structural index to the degree of his self disintegration. There was a suggestion of an inability to perceive accurately as found in persons with schizophrenia or excessive neurosis. It further showed lack of central control. He found that the claimant was so preoccupied with illness that he virtually excludes other interests. He said this indicates severe psychosomatic stress. There was evidence of paranoid thinking. He reported that the claimant was unable to work at this time because of emotional maladjustment. He diagnosed his condition as schizophrenia, paranoid type and hysterical personality.

Dr. Crise reported on October 24, 1972 that the claimant was mentally retarded with a mental age estimated at 6–7th grade level. He thought there may be minimal cerebral palsy.

The claimant was examined for the Administration by Dr. Bernard, a neurologist. The neurological examination revealed a satisfactory physical status, though somewhat obese. He had no pathological reflexes and his cranial nerves were relatively intact. He said his responses to quick commands were rather slow. Psychometric testing, he felt, would reveal this. He added that the claimant has a mental impairment with reduced mental faculties but no organic or physical impairment of his nervous system. An EEG report was normal. Dr. Bernard concluded that at his age and mental status, the claimant would not be hired for any but the most menial jobs.

A lengthy consultative examination was conducted for the Administration by Dr. Hogle on January 12, 1973. He found the claimant to be quite obese with a female type fat distribution. He appeared to be overly friendly, fawning, and constantly apologetic. He spoke with a high pitched, squeaky voice. His facial grimacing and gestures were similar to those with cerebral palsy. Dr. Hogle observed that the claimant's stance and posture were crude and lacked fine and smooth coordination. He found Mr. Rayborn's condition as very confusing. The clinical reports and interviews revealed borderline intelligence, or low average at best. However, tests indicated a 103 I.Q. The clinical evidence showed impaired muscular and neurological coordination, yet a neurologist was unable to report positive findings of neurological deficits. He found from a clinical viewpoint and despite neurological and psychological tests to the contrary that his condition was non-psychotic organic brain syndrome with fatal anoxemia and inadequate personality. He felt that under minimal stressful personal and family situations he could work somewhat successfully. However, he said that presently caring for his invalid wife and baby was too stressful to enable him to work. His present setting caused his work abilities to break down. He considered the claimant disabled from any gainful occupation. The claimant's estimated ability to relate to others was moderately impaired. His personal habits were moderately deteriorated. His interests were moderately severely constricted. He could only fairly comprehend and follow instructions, perform solitary, simple and repetitive tasks. His ability to work with others or perform complex or varied tasks was poor. He concluded that under his present family situation very little improvement could be expected.

Dr. Crise in the final report said the plaintiff was somewhat mentally retarded.

The claimant appeared at the hearing unrepresented by counsel. He was told he had a right to have a lawyer present but that it was not required. He testified that he was disabled as of September 18, 1971 by a back problem with coordination problems. He was born in Kansas in 1928 and left school at age 16 or 17 for academic reasons.

His first job was as a messenger boy for Western Union in Liberal, Kansas, a job which lasted about 2½ years. He left that job to work at a newspaper where his father was circulation manager. He worked there about nine years where he supervised the newsboys. He left the newspaper job because it became too big and complex for him to handle.

He was then employed in the printing trade from 1948 to 1957. He left by mutual agreement claiming difficulties with his fellow employees.

He moved to Gary, Indiana where his parents had now resided. He apparently spent six unsuccessful months looking for employment until he eventually found a job flagging trailers in Illinois. He worked a few months doing janitorial work in Kansas and expressed difficulty keeping up with the work. He tried returning to the printing trade but left because they were giving him a rough time.

Mr. Rayborn came back to Gary, Indiana in 1958 and through the rehabilitation division of the Indiana Employment Service obtained a job at Lakeside Laboratories in Gary delivering film. He drove a vehicle until he had a couple of accidents in 1970 delivering film in Chicago. He was taken off driving and put back to janitorial work. He said he was having difficulties with his boss and quit when he learned he could get severance pay. Because his presence was needed at home, he has not worked since.

Mr. Rayborn married his current wife on August 20, 1965. She was disabled at the time. They have one small child born on April 25, 1971. His wife is in a

wheelchair and cannot get in and out of bed or go to the bathroom by herself.

He said his back started bothering him in the middle 1950's when he hurt it lifting some heavy objects. He added that he has had a coordination problem all his life. He drives an automobile and apparently does most of the housework. His family is entirely supported by welfare.

■ In Social Security cases the burden of proof is upon the claimaint to establish the existence of his disability. *Kutchman v. Cohen,* 425 F.2d 20, 24 (7th Cir. 1970). Title 42 U.S.C.A. §§ 416(i)(1) and 423(d)(1)(A).

■ On judicial review the standard of decision is whether the findings of the Secretary are supported by substantial evidence and whether correct administrative procedures were followed. 42 U.S.C.A. § 405(g). The Court's duty is to examine the entire record to ascertain if the decision was supported by substantial evidence and a trial de novo is not proper. See *Mayhue v. Gardner,* 294 F.Supp. 853 (D.C.Kan., 1968) aff. sub. nom., 416 F.2d 1257 (10th Cir. 1969); *King v. Gardner,* 370 F.2d 652 (6th Cir. 1967); *Flack v. Cohen,* 413 F.2d 278 (4th Cir. 1969). The Supreme Court in *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1972), defined supported by substantial evidence as,

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might expect as adequate to support a conclusion." 91 S.Ct. at 1427.

■ There are four elements of proof that the Secretary must consider in determining whether the claimant is disabled under the Act. 20 C.F.R. § 404.1502. See also *Underwood v. Ribicoff,* 298 F.2d 850 (1st Cir. 1962); *Bittel v. Richardson,* 441 F.2d 1193 (3rd Cir. 1971); *Dillon v. Celebrezze,* 345 F.2d 753 (4th Cir. 1965); *DePaepe v. Richardson,* 464 F.2d 92 (5th Cir. 1972); *Black v. Richardson,* 356 F.Supp. 861 (D.S.C.1973). These elements as listed in *DePaepe, supra,* at 94, are: (1) objective medical facts or clinical findings, (2) diagnosis of examining physicians, (3) subjective evidence of pain and disability as testified to by the claimant and as observed by others, and (4) the claimant's age, education, and work history. Not only must these four elements be considered but their interrelation must also be considered. As stated in *DePaepe:*

"A fair and conscientious consideration of all of these elements of proof should furnish an examiner with a comprehensive and adequate method of determining whether or not a claimant is disabled within the meaning of the Act. . . . It is obvious that all of these elements of proof must be considered together and in combination with each others excluded. 464 F.2d at 94.

Again as stated in *Underwood:*

"For the purpose of making a finding of fact on this issue, the fact finder must recognize the obvious interrelation of these elements of proof. The objective medical findings may show more or less clearly the existence of certain clinically determinable physical or mental impairments. However, a recitation of objective, clinical findings will seldom show, without more, the over-all effect of these impairments on a particular individual. This is a matter of medical judgment to be decided with reference to the individual's general physical condition and the state of development of each of the defects. The expert medical opinion of treating or examining physicians on these subsidiary questions of fact will in most cases be essential in determining with respect to a particular individual the severity of an objectively determinable physical impairment." 298 F.2d 851.

■■ The Secretary cannot rely exclusively on the objective medical data to the exclusion of the claimant's symptoms and other evidence. In fact, symptoms real to the claimant though unaccom-

panied by objective medical data may support a claim for disability benefits. *Bittel, supra,* at 1195; *Ber v. Celebrezze,* 332 F.2d 293 (2d Cir. 1964).

■ The Act is clearly intended to apply to not only physical ailments but mental conditions as well. *Ryan v. Secretary of HEW,* 393 F.2d 340 (9th Cir. 1968); *Ross v. Gardner,* 365 F.2d 554 (6th Cir. 1966). For a recent application of this rule see *Griffis v. Weinberger,* 509 F.2d 837 (9th Cir. 1975). The record below clearly indicates that the claimant has a severe mental disorder preventing him from engaging in any substantial, gainful activity.

■ As outlined in both *Thomas v. Celebrezze,* 331 F.2d 541 (4th Cir. 1964) and *Whittier v. Gardner,* 263 F.Supp. 670 (D.Me.1967), there are two steps to a finding of disability. The first is a finding of a medically determinable physical or mental impairment and the second is a finding that the impairment in fact causes an inability to engage in any substantial gainful activity. The first step is an objective standard. The second test, however, is a subjective standard. As stated in *Whittier v. Gardner, supra,* 263 F.Supp. at 675:

> "although a medically determinable impairment must be found to exist in determining the effect of the impairment of the claimant, 'the emphasis on the individual requires consideration of the subjective reactions.' *Dvorak v. Celebrezze, supra,* 345 F.2d 894, at 895 (10 Cir.)."

It is obvious that the clinical evidence demonstrates that the claimant has a severe mental impairment. Dr. Crise, the claimant's family physician diagnosed the claimant's condition as irritation, depression and poor coordination. In October, 1972, he reported that the claimant was mentally retarded with an estimated mental age of 6 to 7th grade. He also thought that there might be evidence of minimal cerebral palsy. Dr. Bernard, a neurologist, reported on December 5, 1972 that his examination revealed that Mr. Rayborn's mentation was markedly reduced. He also said that the claimant talked slowly, using basic words only. His response to quick commands was slow. Dr. Bernard concluded that the claimant has a mental impairment and reduced mental faculties.

A psychological evaluation by Dr. Kilgore also revealed clinically that the claimant has a severe mental impairment. The Bender Gestalt Z score indicated that he was "badly in need of psychiatric help." He found clinical suggestions of pent-up aggression and fairly conclusive evidence of cortical deficits. The doctor also said the tests revealed little ego strength. The Rorschach tests showed a weakness of reality testing and an inability to perceive accurately consistent with persons suffering from schizophrenia or excessive neurosis. He found that the claimant "is so preoccupied with illness that he virtually excludes other interests." This is indicative of severe psychosomatic stress. His general diagnosis is schizophrenia, paranoid type, and hysterical personality.

A psychiatric evaluation was conducted for the Administration by Dr. Hogle. He also found the clinical existence of a mental disorder. He concluded that the plaintiff was suffering from a non-psychotic organic brain syndrome with fetal anoxemia and inadequate personality. Though he concluded that the claimant's daily activities had mildly deteriorated, his personal habits and ability to relate to other people were more impaired. His general interests were moderate to severely constricted. His ability to work with others or perform complex or varied tasks was rated at the worst level. His ability to perform simple, repetitive tasks or follow instructions was only slightly better.

The clinical and interview reports from his physicians, psychologist and psychiatrist all suggest that the claimant has a severe mental impairment. There is no evidence in the record to support any other conclusion.

The second step to a finding of disability is whether an impairment does in fact cause an inability to engage in any substantial, gainful activity. This as mentioned earlier is a subjective test. In evaluating this standard it is necessary to determine how the impairment affects a claimant's ability to work. As argued earlier, the record uncontrovertibly shows that the claimant is suffering from a mental impairment. Each of the examining medical personnel, even those hired by the Administration to conduct consultative examinations, concluded that Mr. Rayborn has a mental impairment. There was no evidence presented in the record to the contrary.

When we examine what the doctors say about how the mental impairment affects Mr. Rayborn's ability to perform substantial, gainful activity, we see that they unanimously agree again that he cannot and should not be required to perform outside employment. Dr. Kilgore, a psychologist, who conducted a clinical examination of the claim for the Administration, concluded that based on his diagnosis of schizophrenia and hysterical personality, Mr. Rayborn was "apparently unable to work at this time because of emotional maladjustment." Dr. Bernard, a neurologist, concluded that at Mr. Rayborn's age and mental status "he is not likely to be hired for any but the most menial jobs." Finally, and most importantly, Dr. Hogle, a psychiatrist hired by the Administration, concluded that Mr. Rayborn "must be considered disabled so far as gainful occupation is concerned." Dr. Hogle said that although the claimant could work under minimal stressful personal and family situations, the present setting of an invalid wife and 18-month baby to care for represented too much stress to allow him to also work. The unanimous conclusion of the doctors, even those hired as consultants by the Secretary, was that Mr. Rayborn's impairments prevented him from engaging in any substantial, gainful activity. There was no evidence to support the Secretary's finding that the claimant was not disabled.

While the Secretary is not bound by medical opinions that the plaintiff is disabled, some weight should be given to determinations that the plaintiff is disabled. *Collier v. Richardson,* 344 F.Supp. 768 (D.W.Va.1972). The Secretary cannot totally ignore the medical and psychiatric evaluations of the plaintiff's condition. For a recent case closely in point see *Abel v. Secretary HEW,* 384 F.Supp. 1212 (N.D.Tex.1974). The medical evidence here presents a much stronger case for reversal than that in *Abel.* Not only is it important that each doctor found that the plaintiff was suffering from a mental impairment affecting his ability to engage in substantial gainful activity, but that even those doctors hired by the Secetary as consultants concluded that he was unable to work. See Doctor Hogle's psychiatric report where he says that Mr. Rayborn is disabled as far as any gainful activity is concerned. It cannot be said that the consultants were rendering anything less than an objective evaluation of the plaintiff's condition. After all, they are selected by the Secretary and paid by the Administration to conduct an independent evauation of a claimant's condition. 20 C.F.R. § 404.1527. Dr. Hogle's conclusion that Mr. Rayborn suffered from a mental impairment sufficient to prevent him from gainfully working was entirely consistent with all the other medical opinions in the record.

The medical evidence taken as a whole is extremely valid because it is consistent throughout, it has been tested by complete outside consultative evaluations, and because there is nothing to the contrary to suggest that the plaintiff does not have a disabling mental impairment. It may be more difficult to comprehend mental disorders and their effects on an ability to work than it is to understand the effects of pure physical ailments. But this should in no way preclude a finding of disability based on mental conditions. The Act clearly intends to include mental ailments within its definition of disability. 20 C.F.R. §§ 404.1504 and 404.1539. See also

*Murphy v. Gardner*, 379 F.2d 1 (8th Cir. 1967). Though it may be more difficult to clinically determine the existence of disabling mental impairment and thus open the system to abuse it is clear in the instant case that Mr. Rayborn's condition exists and that the ailment is genuine. Several independent psychological and psychiatric evaluations diagnosed the existence of a mental disorder. Furthermore, when we review Mr. Rayborn's employment record and personal history, we can see definite patterns of his mental ailments. He quit school early because it was "hard" for him. He has been able to hold only menial and simplistic jobs despite possible findings that he has an average intelligence quotient. He has said that he has always been "slow" and that numerous employers discriminated against him. Whether his "slowness" or allegations about discrimination are true or not he has consistently believed them to be true even to his obvious detriment. Dr. Hogle felt that little improvement could be expected. His mental ailments appear to be honest and genuine and this is precisely what the various physicians and psychiatrists have also felt.

The law requires that the Secretary's findings must be supported by substantial evidence. 42 U.S.C.A. § 405(g). Substantial evidence means such relevant evidence as a reasonable mind would expect as being adequate to support a particular conclusion. *Richardson v. Perales, supra*, 91 S.Ct. at 1427. The Secretary's findings in the instant case are not supported by substantial evidence. All four of examining physicians, even those hired as consultants by the Secretary, agreed that Mr. Rayborn was suffering from a mental condition. Again, all four of the examining doctors concluded that Mr. Rayborn's mental condition prevented him from engaging in any substantial, gainful activity. Despite this unanimity of medical opinion, the Secretary concluded that the plaintiff was not suffering from a disabling medical condition. He refers to little if any evidence in the record to support his conclusion other than his mere assertion. He attempts to rely on things Mr. Rayborn said at the hearing to support his conclusion that Mr. Rayborn is not disabled. He cites Mr. Rayborn's statement that he could work if his pay would be high enough. He ignores his own admission that Mr. Rayborn is mentally retarded and the psychiatric reports concerning the plaintiff's mental illness. Little, if any, weight should be given to those statements because of Mr. Rayborn's mental condition as revealed in Dr. Kilgore's psychological evaluation. By relying on Mr. Rayborn's statements about why he is not working, he places the greatest emphasis on the least reliable evidence. The Administrative Law Judge also concluded that there is no evidence of mental impairment in the record except a life long pattern of mental retardation. He simply ignores Dr. Kilgore's diagnosis of schizophrenia, paranoid type, and hysterical personality. Dr. Kilgore based his evaluations on sound clinical tests. The Secretary may weigh conflicting evidence but he cannot ignore competent evidence. He cannot reach a conclusion first and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result. The Secretary's decision is not supported by any of the evidence in the record. In fact, any reasonable interpretation of the evidence would result in a finding of disability.

This plaintiff was before the Administrative Law Judge without counsel. The Administrative Law Judge had abundant evidence regarding the mental limitations of this plaintiff. Notwithstanding this the Administrative Law Judge chose to frame questions directed to the plaintiff and to rely exclusively thereon. Had the plaintiff had the benefit of much needed counsel at that hearing it is very reasonable to believe that a fairer record would have been made. There is strong analogy to the cases where a claimant is represented by incompetent or ineffective counsel. See *Arms v. Gardner*, 353 F.2d 197 (6th Cir. 1965). See also *Gold v. Secretary HEW*, 463

F.2d 38 (2d Cir. 1972); *Webb v. Finch,* 431 F.2d 1179 (6th Cir. 1970); *Estep v. Richardson,* 465 F.2d 969 (6th Cir. 1972); *Alamo v. Richardson,* 355 F.Supp. 314 (D.C.P.R.1972); and *Roman v. Secretary HEW,* 355 F.Supp. 646 (D.C. P.R.1972).

It is clear that the Social Security Administration has the duty to insure that its actions are fair and thorough. *Quinonez v. Richardson,* 357 F.Supp. 420 (D.P.R.1973); *Sale v. Celebrezze,* 210 F.Supp. 836 (D.Ind. 1962); *Garrett v. Richardson,* 363 F. Supp. 83 (D.S.C.1973). The Act is also essentially remedial in character. *Hayes v. Celebrezze,* 311 F.2d 648 (5th Cir. 1963).

On the basis of the foregoing the decision of the Secretary should be and hereby is reversed. The plaintiff's motion for summary judgment is granted. The defendant's motion for summary judgment is denied.