**Manuel Ramirez RUIZ, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. 82–2671CC.**

United States District Court, District of Puerto Rico.

Feb. 27, 1984.

Aurelio Saliva Mattei, Ponce, P.R., for plaintiff.

Osvaldo Carlo-Linares, Asst. U.S. Atty., Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action brought pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. Sec. 405(g), to review a final determination of the Secretary of Health and Human Services which denied in part plaintiff's application for a period of disability and disability insurance benefits. Claimant was thirty-five years of age when he filed the current application, the third of its kind,[1] in December 1977 alleging disabil-

---

1. Plaintiff's previous applications in 1974 and 1975 were denied for failure to meet the earnings requirements of the Act. The Secretary considered the current application as a request for revision and reopening. After reconsidera-

tion of plaintiff's earning records he concluded that due to some administrative error certain earnings had not been credited and that plaintiff met the insured status requirement. Accordingly, the application was reopened and the

ity since August 12, 1974 [2] due to a head injury. He has a very limited education having reached only the fourth grade and cannot read or write. The Secretary initially denied this claim yet, on reconsideration and after a hearing held on January 8, 1982, concluded that plaintiff had been under a disability as defined by the Act since July 10, 1975 when he had been disabled for purposes of receiving Supplemental Security Income under Title XVI of the Act, but that his disability ceased as of March 31, 1977 when he left the United States to reside in Puerto Rico and supplemental security income benefits were suspended. Thereafter, the Secretary concluded, plaintiff's condition improved, as evidenced by the lack of any medical evidence from April 1, 1977 through the date of the decision. Beginning on that date, the Secretary found, plaintiff was not prevented by his impairment to perform his past relevant work as a cook helper and was, therefore, not disabled under the Act. Plaintiff alleges that the Secretary's determination that he was not under a disability from August 22, 1974 to July 9, 1975 and from April 11, 1977 through the present date is not supported by substantial evidence in the record.

It appears from the evidence on record that plaintiff was admitted to the Ponce District General Hospital on August 12, 1974 for a cranial operation as a result of a fracture in his skull, that he was discharged from the hospital on August 22, 1974 with a temporary disability and that he received outpatient treatment until September 11, 1974. Thereafter, plaintiff apparently moved to the United States; the next medical evidence consisting of a neurological examination performed in New Jersey on September 10, 1975 and an electroencephalogram report dated August 25, 1975. The neurologist who examined him

on that date did not find any neurological deficits due to his status post craniotomy. The report of the electroencephalogram was normal. Nevertheless, the examining doctor recommended a repeat skull series and an EMI scan. Based on this evidence, on September 30, 1975 the Secretary denied plaintiff's request for supplemental security income.[3] On February 4, 1976 a psychiatrist examined plaintiff and diagnosed that he was suffering from organic brain syndrome with depressive psychosis. He informed that the patient's attention and concentration were poor, his affect inadequate, his mood depressed and his intelligence, memory and general fund of knowledge were below normal limits. In his opinion plaintiff was unable to work and not capable of handling benefit payments on his own. He recommended, however, that a full neurological examination be made since it appeared that these symptoms were related to the accident of August 1974 in which plaintiff fractured his skull. The psychiatrist's prognosis was guarded. Based on this report, on reconsideration, plaintiff was granted supplemental security income on February 9, 1976. He was found to be under a disability since July 10, 1975. Plaintiff did not request review of that decision. In 1977, however, plaintiff informed the Social Security Administration that he would be returning to Puerto Rico as of March 5 of that year. Consequently, on March 2, 1977 he was informed that, as of April 1, 1977, he would not receive supplemental security income payments. In Puerto Rico he filed the current application on December 21, 1977. On February 14, 1978 plaintiff was evaluated by a consultant psychiatrist who diagnosed that he suffered from organic brain syndrome due to brain trauma with anxiety reaction, moderate to severe. He

question of plaintiff's disability was considered. See: 20 CFR 988(c)(7) (1983).

2. The onset date of plaintiff's impairment was amended during the hearing from 1975, which appeared on the application, to August 12, 1974, date which appeared on the previous applications.

3. Plaintiff apparently had filed concurrent applications for disability benefits and supplemental security income. Apparently because the earnings requirements differ under titles II and XVI of the Act, the applications are considered separately.

found, however, that his affect was appropriate, his mood normal, his speech coherent, relevant and spontaneous. He found no evidence of disorganization in thought processes, ideas of reference or delusions. Plaintiff was oriented as to time, place and person and the psychiatrist did not find evidence of deterioration in his mental and intellectual capacity at that moment. Nevertheless, his attention, concentration and retention were diminished and his memory for recent and remote events was impaired. The consultant psychiatrist further concluded that plaintiff was unable to handle funds adequately and incapable of sustaining normal interpersonal relationships. As to his residual functional capacities, the psychiatrist stated that plaintiff lacked the capacity to sustain attention and perform routine, repetitive activities that are done rapidly and require little judgment or to tolerate the work pressures generally associated with production requirements of unskilled work and that he could not understand, retain or carry out instructions given by a supervisor. In his opinion, plaintiff could not communicate with a supervisor or fellow co-workers, nor could he tolerate criticism or adjust to competitive work situations. Finally, plaintiff was to meet the mental demands required by his customary work. All this notwithstanding, the psychiatrist was of the opinion that plaintiff had the capacity for meeting people.

Based on this evaluation, on March 15, 1978 plaintiff's application was denied as it was determined that he could meet the basic demands of unskilled work and was able to engage in his customary job as a dishwasher in the hotel and restaurant business. On March 9, 1978 he requested reconsideration of this denial and claimed that "no one ha[d] examined [him] properly [and that] no one can know what [he is] feeling unless a proper examination is carried out." On August 21, 1981 reconsideration was denied. At a hearing he presented additional evidence consisting of a medical report of a Dr. Ramón Ferreris who informed that he had been seeing plaintiff monthly since December 21, 1977

until July 23, 1981 and was treating him with anticonvulsives and tranquilizers for what he diagnosed as grand-mal seizures due to a head injury suffered in 1974. In addition, he presented a clinical abstract from the Ponce District General Hospital which confirms that plaintiff did in fact suffer a fractured skull and was operated in August 1974.

At the hearing plaintiff and his wife testified that he was hit on the head by an assailant in August of 1974 and was operated at the Ponce District Hospital at which time plates were placed in his skull. Ever since, plaintiff testified, he had suffered from attacks and dizzy spells which were alleviated when he took medication. Plaintiff's wife testified that he had changed considerably since the accident and that he had become nervous and aggressive towards her. According to their testimony plaintiff does nothing but sit or sleep all day.

Prior to the hearing it appears that plaintiff's attorneys had requested that he be referred to a psychologist for an evaluation, including a Wechsler Adult Intelligence Scale test (WAIS). This request was renewed at the January 1982 hearing and the administrative law judge ruled that plaintiff would be referred for further evaluations, including a psychiatric, a neurological and a psychological examination. He stated that this was necessary because plaintiff had been very sick in 1978 and there was no available medical evidence since then. The administrative law judge, however, issued his decision on March 24, 1982 and, based on the lack of medical evidence since April 1, 1977 to the date of his decision, held that plaintiff was not disabled as of April 1, 1977. For the period prior to April 1977 the administrative law judge applied collateral estoppel to the Secretary and found that plaintiff was under a disability from July 10, 1977 through March 31, 1977, period during which he had been receiving supplemental security income under Title XVI of the Act based on a

finding of disability.[4] With respect to plaintiff's residual functional capacities during the later period for which he was found not disabled, the administrative law judge found that a residual functional capacity to perform the simple repetitive tasks of unskilled work where the claimant must deal with things rather than with people was more consistent with the mental status findings made by the psychiatrist who evaluated plaintiff in 1978 and amended it accordingly. Moreover, based on his observation of plaintiff's conduct at the hearing and on his daily activities, he gave no credibility to claimant's allegations of constant, severe headaches, convulsive seizures and dizzy spells.

On May 11, 1982 review of the hearing decision was requested and additional evidence consisting of a psychological evaluation made on April 7, 1982 by psychologist Rafaela Franco. It appears from that report that two psychological tests and an intelligence test were made and the results are of concern. It appears from the report that plaintiff obtained an intelligence quotient (I.Q.) of 68 in the Wechsler Adult Intelligence Scale, Puerto Rican adaptation, having obtained a 72 in the Verbal Scale and a 67 in the Performance Scale for a classification of mildly mentally retarded, borderline and mentally retarded in the Full, Verbal and Performance Scales respectively. Severe impairments were observed in the performance part of the test; clumsiness, slowness and insecurity having been observed in his work style. According to the report the results of the Bender Gestalt test revealed deviations from the standards for adults. Plaintiff's work was characterized by severe rotations, simplifications, distortions and difficulty integrating characteristics which are compatible for individuals with organic disorders. Difficulty following a sequence could be observed. These results were consistent with those obtained in the Wechsler test. The Rorschach Personality Projective test was also administered revealing disorganization of mental processes with manifestations pertaining to a conduct typical of a schizophrenic condition. In the psychologist's opinion plaintiff's intellectual and psychosocial functioning have been deteriorated and at present are severely impaired. According to her, "areas which are essential to a person of limited social and intellectual resources in order to function, such as attention, memory and viso-motor skills, have been affected by organic damage." This, together with his emotional condition which "interferes and creates an obstacle for using the resources which are already scarce" led her to conclude that little accomplishment can be obtained from treatment or vocational rehabilitation.

▮▮▮ The Appeals Council considered this additional evidence and concluded that reconsideration was not warranted. We disagree. The determination of whether a person is disabled within the meaning of the Social Security Act is the responsibility of the Secretary, 20 CFR Sec. 404.1527 (1983); *Griffin v. Weinberger*, 407 F.Supp. 1388, 1395 (N.D.Ill.1975) aff'd. 539 F.2d 712 (7th Cir.1976); and judicial review of such a determination is limited to whether the Secretary's findings are supported by substantial evidence in the record as a whole. 42 U.S.C. Sec. 405(g). *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). "Substantial evidence" has been defined as "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). In other words, the Secretary's findings must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." *Rodriguez*, 647 F.2d 222. Although it is the Secretary's duty as the ultimate finder of facts to resolve all conflicts in the evidence, *Lizotte v. Secretary*

---

4. The term "disability" has the same meaning under both Title II and Title XVI of the Act.

See: 42 U.S.C. Sec. 423(d); 42 U.S.C. Sec. 1382c(a)(3).

of Health and Human Services, 654 F.2d 127, 129–130 (1st Cir.1981) (and cases cited therein), she may not arbitrarily choose to ignore uncontroverted medical testimony nor "rely on a portion of an expert's report where a fair reading of the entire report indicates that the expert reached a conclusion contrary to that asserted by the Secretary." *Hassler v. Weinberger*, 502 F.2d 172, 178 (7th Cir.1974). In the instant case the administrative law judge rejected the psychiatrist's assessment of plaintiff's residual functional capacities which found plaintiff impaired to do his past work as well as any kinds of work requiring attention and involving routine, repetitive activities which are performed rapidly and, based upon his own observation of plaintiff during the hearing and upon the lack of medical evidence dating from the same period, concluded that plaintiff could perform the simple repetitive tasks of unskilled work such as his previous job as a cook helper. Aside from the fact that the additional evidence submitted confirms the psychiatrist's assessment of residual functional capacities, the administrative law judge acted unfairly in utilizing the lack of evidence in the record as grounds for rejecting this medical opinion when, at the hearing, he had granted plaintiff's request to undergo additional medical examinations. Moreover, although the administrative law judge's observation of a plaintiff's conduct during the hearing can sometimes be the basis for the rejection of one medical opinion and the adoption of another, where the medical opinion is uncontroverted, as in this case, the administrative law judge's reliance on his own observations amounted to superimposing his lay judgment on a professional one, particularly where the psychiatrist had observed that, although plaintiff was coherent, relevant and spontaneous in his speech, his attention, concentration and retention were diminished and his memory, as well as his judgment and reasoning were impaired. See *Aubeuf v.*

*Schweiker*, 649 F.2d 107, 113–114 (2d Cir. 1981); *Day v. Weinberger*, 522 F.2d 1154, 1156–1157 (9th Cir.1975); *Lund v. Weinberger*, 520 F.2d 782, 785–786 (8th Cir. 1975). See also *Helms v. Califano*, 473 F.Supp. 1329 (W.D.N.C.1979); *Abel v. Secretary of Health, Education and Welfare*, 384 F.Supp. 1212 (N.D.Tex.1974). If the administrative law judge had any doubts as to the reliability of this report, he should have followed his original inclination to refer plaintiff for further medical evaluations. See: *Rodriguez v. Secretary of Health and Human Services*, 570 F.Supp. 1445, 1446 (D.P.R.1983). As it is, the Secretary's determination that plaintiff could perform his past work as a cook helper as well as the simple, repetitive tasks of unskilled work is not supported by substantial evidence in the record. On the contrary, the psychiatrist's report and the psychological evaluation support a conclusion that plaintiff is under a disability within the meaning of the Social Security Act and Regulations. See 42 U.S.C. Sec. 423(d); Sections 11.18, 12.02, 12.03 and 12.05 of the Listing of Impairments, Appendix 1 of the Regulations of the Social Security Administration, 20 CFR (1983). Accordingly, we remand this case to the Secretary for computation and payment of the benefits for which plaintiff is eligible.[5] The Secretary's decision is REVERSED.

SO ORDERED.

---

5. As for the period from August 22, 1974 to July 9, 1975, collateral estoppel applies to the plaintiff as well as to the Secretary and plaintiff was not disabled for purposes of disability insurance benefits as well as for purposes of receiving supplemental security income.