Pauline GUDLIS, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 77 C 2628.

United States District Court, N. D. Illinois, E. D.

May 26, 1978.

Joseph Burden, Cook County Legal Assistance Foundation, Inc., Maywood, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Northern District of Illinois, Narda J. Cisco, Asst. U. S. Atty., Chicago, Ill., for defendant.

## OPINION

WILL, District Judge.

This is an action brought pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of a final decision of the Secretary of Health, Education and Welfare (Secretary). The decision, dated May 27, 1977, affirmed an Administrative Law Judge's (ALJ) decision of October 22, 1976, denying plaintiff's claim of entitlement to a period of disability and to disability benefits. Before us at this time are cross motions for summary judgment and plaintiff's alternate motion for remand for further administrative action. For the reasons herein stated, we deny the cross motions for summary judgment and order the case remanded to the Secretary for proceedings not inconsistent with this opinion.

## I.

Plaintiff is a 60 year old female with a high school education. She had worked in various capacities for Illinois Bell Telephone Co. for a period of 37 years, beginning as a messenger girl and achieving a final position as a tax analyst.

In September 1974, plaintiff was hospitalized after an episode of blurred and marred vision, which was diagnosed as thrombosis of the central retinal vein, left eye, resulting in 20/200 vision, or functional blindness, in that eye. In her applications for relief, plaintiff complained of loss of vision and dizziness. At a hearing held on December 1, 1975, plaintiff complained of the first two symptoms plus extreme hypertension and arthritic pain. She also stated that fluorescent light hurt her good eye, causing blurring and pain, and that she was no longer able to do cooking, shopping, or other housekeeping chores, read or watch televi-

sion for long periods of time, or leave the house by herself. She further testified that for a time she was "passing out" every morning and that she was taking several types of prescriptive medication, including Hydrochlorothiazide [sic] with Reserpine, for high blood pressure, Antivert to prevent dizziness, Coumadin, [sic] an anti-coagulant, Neprobate, a tranquilizer to prevent hypertension, and Vitamin B–12 injections.

Following the hearing, at which plaintiff appeared with her husband, Administrative Law Judge Stillerman issued an opinion dated December 4, 1975, finding that plaintiff was not under a disability. This decision was reversed and remanded by the Appeals Council on April 12, 1976, with instructions to take additional vocational evidence. The Council also stated that "if appropriate, the testimony of a medical adviser should be obtained to assist the administrative law judge in determining whether additional medical documentation is necessary and in evaluating the medical evidence of record."

A second hearing was held before ALJ Warns on October 19, 1976. Plaintiff was again accompanied by her husband and this time represented by a law student. At this hearing, additional testimony was taken from plaintiff but the ALJ refused to allow plaintiff's husband to testify. The ALJ introduced a written statement of a medical adviser who had looked at the previous medical reports but had never personally examined the plaintiff, and asked a vocational expert a hypothetical question based on the presumed condition of plaintiff. On October 22, 1976, ALJ Warns issued a supplemental decision finding that claimant was not under a disability, which was affirmed by the Appeals Council and made the final decision of the Secretary on May 27, 1977. This action followed.

## II.

The standard for, and scope of, review by a United States District Court sitting in review of a disability determination is mandated by Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which provides in relevant part:

. . . the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and the decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . . The court . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary . . . .

The Supreme Court, in a discussion of § 205(g), has defined substantial evidence to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In the instant case, at issue is whether the ALJ's, and subsequently the Secretary's finding of no disability is supported by "substantial evidence." Disability is defined in Section 223(d) of the Social Security Act, 42 U.S.C. § 423(d) as

1(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months;

\*   \*   \*   \*   \*   \*

2(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual)

"work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

■ In determining whether or not a claimant qualifies for disability status under 42 U.S.C. § 423(d), the court is directed to four elements of proof:

1) Clinical findings of treating and examining physicians on the existence of medically determinable physical or mental impairment;

2) Opinions of treating or examining physicians on subsidiary questions of fact relating to the severity of the medically determinable impairment;

3) Testimony of the claimant, corroborated by his family and neighbors concerning the effect of the medically determinable impairment;

4) Evidence of the claimant's educational background, work history and present age.

See *Johnson v. Weinberger,* 525 F.2d 403, 407 (7th Cir. 1975). In addition, the plaintiff may establish a claim to benefits by showing that he or she is unable to perform his or her former job due to the disability. At that point, the burden shifts to the Secretary to produce evidence that will justify a finding that there is available some other kind of substantial gainful employment which the plaintiff is able to perform. *Stark v. Weinberger,* 497 F.2d 1092 (7th Cir. 1974).

There is agreement that plaintiff has an impairment which prevents her from returning to her previous job with Illinois Bell, but the Secretary contends that her eye impairment, which does not meet the requirements of statutory blindness, does not constitute the basis of a finding of disability. The Secretary also argues that plaintiff's hypertension does not meet the requirements for disability.

The decision of ALJ Warns apparently rested on three pieces of evidence: 1) the report of the medical adviser; 2) the testimony of the vocational expert; and 3) the ALJ's own observations. He refused the testimony of plaintiff's husband and disallowed any subjective evidence.

The medical adviser, Dr. Abramson, was sent the medical reports previously entered into evidence at the first hearing. These reports included 1) the report of Dr. Nainis, plaintiff's family doctor, who had examined plaintiff on March 10, 1975 and found that plaintiff continued to have loss of vision in her left eye, but that the right eye was normal and the condition stable; 2) the report of Dr. Domanskis, an ophthalmologist, who examined plaintiff on March 31, 1975 and found that plaintiff's right eye was 20/25–4 while the left one was 20/200 with eccentric fixation. He diagnosed arteriosclerosis of the retinal vessels in both eyes, and optic atrophy in the left eye. In response to a questionnaire sent him by ALJ Stillerman, Dr. Domanskis stated that plaintiff's condition was "deteriorating" and that lifting, stretching, pushing, pulling, stooping, or prolonged reading would "probably not" aggravate the condition, presumably meaning that it would not hasten the ongoing deterioration; 3) the report of Dr. Rosi, an internist, based on an examination in September 1974, which found hypertension and marked arteriosclerosis of the retinal vessels.

Dr. Abramson, a specialist in internal medicine and cardiovascular disease, concluded his report with the statement:

Based on the information in the record, I would assume that the cause in the present patient is arteriosclerosis of the retinal vessels. I do not believe that the involvement of the left eye will have any effect upon the prognosis of the right eye. (R. 160)

Dr. Abramson did not, however, personally examine the plaintiff nor consult with the examining physicians. It also appears that he was not given the transcript of the earlier proceeding, which would have revealed the continuing symptoms described by plaintiff concerning her sensitivity to fluorescent light, her inability to read or view for long periods of time, and her continuing dizziness, which may have been a result either of her hypertension or her eye problems.

The Seventh Circuit has noted in *Allen v. Weinberger,* 552 F.2d 781, 786 (7th Cir. 1977) that the opinions of physicians based upon the reports of other doctors and without personal examination of the claimant "have little force" and are "hardly a basis for competent evaluation." We do not find, therefore, that Dr. Abramson's opinion can constitute "substantial evidence" upon which the ALJ's decision can be based. In this connection, we note also that the most recent medical evidence admitted into the record was a statement by Dr. Rosi dated December 27, 1976:

> As stated previously in my communication of July 3, 1976, Mrs. Gudlis is under my medical supervision for treatment of arteriosclerosis of the retinal vessels and optic atrophy as well as hypertension. She is being examined at regular intervals.
>
> It is my opinion that she is totally disabled physically and mentally as it relates to her condition. (R. 161)

This statement was submitted to the Appeals Council following Judge Warns' denial of benefits and was apparently ignored in the Council's affirmance of the ALJ's decision. Although this was certainly a conclusory statement, the court in *Allen v. Weinberger, supra,* 552 F.2d at 785–86 found:

> The opinion of an examining physician that the claimant is totally disabled, though phrased as an ultimate conclusion on the question presented to the Secretary, is entitled to consideration as an indication of how severe the patient's impairment was at the time of the examination. . . . Where there is no dispute as to the existence of a physical or mental impairment, such an opinion, standing alone, may establish total incapacity for substantial gainful activity within the meaning of section 423.

Inasmuch as Dr. Rosi's statement is dated December 1976 and was made on the basis of personal examination, while Dr. Abramson's diagnosis was based solely on written reports of other doctors' examinations between September 1974 and March 1975, we believe that the Appeals Council, and the Secretary, should minimally have given plaintiff reasons for not remanding the case in light of the most recent evidence.

We are also in agreement with plaintiff's challenge to the type of testimony elicited from the vocational expert and plaintiff's objection to the ALJ's refusal to accept subjective evidence.

The ALJ posed the following hypothetical question to the vocational expert:

> Q. Doctor, if I were to find that the claimant's only impairment is the loss of vision of the right [sic] eye; that blood pressure of 160 over 90 is not considered hypertensive heart disease by the Administration and that it is under control by medication nevertheless; that the arteriosclerosis may someday cause further impairment but has not manifested itself in any subsequent breakdown of the body system; that claimant, may not however, be employed in any situation which would cause emotional [sic] or strain; would you tell me, in view of her age, education, past work experience, what, if any, jobs she can do and the extent to which those jobs exist in the Chicago metropolitan area? (R. 84)

The vocational expert responded with suggestions such as inspector of rubber, food, or plastic products, security guard or watchman, dietary aide or "tray girl" in hospitals, cashier, and assembly line work in kitchen appliances. The ALJ did not allow the vocational expert to take into account other facts in evidence such as plaintiff's continuing dizziness, inability to see clearly for long periods of time, and the like, and cut off plaintiff's representative's attempts to direct cross examination in that direction. As the ALJ stated:

> We are not permitted the latitude of taking into consideration the individual's personal response to the trauma experienced. We may only take into account how she should have responded to that trauma. (R. 90)

Similarly, the ALJ refused to allow plaintiff's husband to testify to the difficulties plaintiff was having, stating:

> The statute requires that claimant, who has the burden of proof, establish by competent medical evidence supported by medically approved clinical and laboratory tests that she has an impairment. Lay testimony to the effect that manifestations of that impairment are not relevant and so, unless Mr. Gudlis, and I really do not know how—in what way Mr. Gudlis is going to improve this record or add anything that would be relevant at all, and so I am not going to give him the opportunity to testify; . . . (R. 82)

■ We first note that, in accordance with the standards for review enunciated in *Johnson v. Weinberger,* noted *supra,* it was error for the ALJ to exclude "testimony of the claimant, corroborated by his family and neighbors concerning the effect of the medically determinable impairment."

■ On the broader issue of capacity for employment, we are in agreement with the statements of Judge Crowley in *Atkins v. Califano,* 446 F.Supp. 1017 at pp. 1022–1023 (N.D.Ill.1978):

> We are cognizant that many courts give a literal reading to the language of 223(d) of the Act, 42 U.S.C. § 423(d) and do not require either any showing by the government that any appropriate job exists which would be suitable for a claimant in his own locality or that there be any vacancies for which he might conceivably qualify. This court cannot subscribe to such a rigid view which deals only with theoretical abstractions and ignores the realistic impact which such decisions have on individual claimants in quite specific locations. We adopt that common-sense interpretation so cogently stated by Judge Sobeloff:
>
> > "The standard which emerges from these decisions in our circuit and elsewhere is a practical one: whether there is a reasonably firm basis for thinking that this *particular* claimant can obtain a job within a reasonably circumscribed labor market. While we have con-

demned exclusive reliance upon the Dictionary of Occupational Titles and similar publications, we have indicated that these manuals are useful tools in opening up, by way of suggestion, an assortment of possible job titles to which the claimant may be suited. They may serve as the beginning, but not the end, of the inquiry. There must be a further showing as to which of these occupations are *in fact* available to a person with the claimant's specific characteristics and impairments. Arm-chair speculation, even by vocational experts, is insufficient in the absence of any evidence that employers in the area have hired persons with the claimant's limitations or would be willing to do so. Theoretical expertise untarnished by any field investigations is not enough. While we do not require the Secretary to take the claimant by the hand and lead him to a specific job, the statute is not satisfied without a *factual* showing of job availability for persons of his limited capacity. True, the Act does not entitle a claimant to benefits if work is unavailable because of depressed economic conditions; yet if, as a practical matter, employers would not hire him because of his age, physical impairments and lack of education, he does not lose his benefits merely because even able bodied persons can find no work in the area.

"Requiring a common-sense judgment as to the practical employability of an impaired person is a far cry from converting the Social Security Act into an unemployment compensation law. Just as we reject rigid and abstract standards of physical capability which disregard the fact that a person with the claimant's impairments might not be considered for any substantial employment, so we do not lay down a rule favoring claimants whose capacities, though impaired, enable them to engage in gainful work but who have not made a good faith endeavor to secure work that is available and within their

capacities. A man is required to act to help himself in whatever way it is reasonable to expect of a man in his circumstances. An employer hires the whole man, not a separate back, hand or eye, and if the claimant is so afflicted as to put any job beyond his reach, he is entitled to benefits if he meets the other requirements of the statute. In all cases there should be a realistic exploration of the totality of the surrounding circumstances." *Gardner v. Earnest*, 371 F.2d 606, 609–10 (4th Cir. 1967).[1]

We find therefore that the ALJ's use of the vocational expert without allowing the entry of evidence as to what plaintiff actually could do, rather than what, according to regulations, she ought to have been able to do, was error.

Finally, while excluding all subjective evidence of plaintiff, the ALJ nevertheless created and admitted some highly subjective evidence of his own. Plaintiff had looked at a document to help her remember her exact job title.

Q. All right, would you pass that document to me?

A. Oh, sure.

Q. Well, I'm compelled to point out for the record, Mrs. Gudlis, that the document you passed up to me and which you read with no difficulty whatsoever is a very poor and I would have to classify it as a poor, less than good, photostatic copy of your application for pension from Illinois Bell and in job title. . . .

\* \* \* \* \* \*

A. Sir, I have been going over these papers every day, trying to get an answer. Every day—

Q. All right, I'm going to put this in evidence—

A. —in fact, I used to work on this so I know the forms.

Q. Well, you know the forms, surely, but I asked you what your job title was and you said it changed so often you had to look to see, and you looked to see, and what you looked to see at is something that is not very legible. (R. 73–74)

■ The ALJ also included that observation in his opinion. There had been no dispute, however, that plaintiff could see clearly through her right eye for short periods of time. We find the ALJ's use of what turned out to be a "home made experiment" as to plaintiff's ability to see to be highly objectionable, and to range far beyond the scope of judicial notice.

■ We find, therefore, upon consideration of the record, that the Secretary's decision is not supported by substantial evidence and we deny defendant's motion for summary judgment. We believe, however, that sufficient evidentiary questions exist to preclude our granting plaintiff's similar motion. We will grant instead plaintiff's motion to remand the cause for further proceedings and we will require as a minimum that, in addition to the earlier medical testimony, plaintiff be personally examined by a physician chosen by the Secretary, that plaintiff's family and neighbors be allowed to testify at any subsequent hearings, that any evaluation by a vocational expert be made with due consideration given to plaintiff's particular condition, and that any occupations for which plaintiff is believed qualified by the vocational expert be shown to be "in fact available to a person with claimant's specific characteristics and impairments."

We are constrained to observe in passing that the record of the hearing before ALJ

1. We are also in agreement with Judge Crowley's observations concerning the selection of possible job opportunities:

An earlier written evaluation had instead recommended the occupations of ware cleaner in the pottery and porcelain industry (774.-887), sole scraper in the boot and shoe industry (788.887) or cleaner in the electronics industry (726.887). This Court grows impatient with such improbable suggestions; stargazing, licking stamps in a business mail room, or tightening screws on widgets would seem to be jobs equally valid as possibilities. *Rodriguez v. Califano*, (N.D.Ill. May 4, 1977, No. 75 C 4093, slip op. at 7 n. 2).

**408**

Warns evidences a distressing lack of judicial impartiality, knowledge of what is admissible evidence, the weight to be given to opinion evidence based solely on hearsay and without first-hand observation, and the criteria to be applied in determining disability as enunciated by the decided cases, *e. g., Johnson v. Weinberger, supra.* If a further hearing before an administrative law judge is to be convened, we trust that it will be conducted by one who does not repeat the errors in the record before us.