Francesca GARCIA, S. S. # 454–40–7241, Plaintiff,

v.

Joseph CALIFANO as Secretary of Health, Education and Welfare, Defendant.

No. 77 C 2448.

United States District Court, N. D. Illinois, E. D.

Jan. 9, 1979.

Daniel Galatzer, Chicago, Ill., for plaintiff.

Michael L. Siegel, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

JULIUS J. HOFFMAN, Senior District Judge.

This is an action for judicial review of a final decision of the Secretary of Health, Education and Welfare, denying the plaintiff disability insurance benefits as provided under section 223 of the Social Security Act. 42 U.S.C. § 423. The court derives its jurisdiction from 42 U.S.C. § 405(g).

An examination of the record of proceedings before the Administrative Law Judge reveals that the plaintiff filed an application for disability insurance benefits on February 18, 1975, alleging that lower back pain commencing December 29, 1973, rendered her unable to work. After the application was denied by the Bureau of Disability Insurance, and that decision was upheld upon reconsideration, the plaintiff requested and was granted, a hearing before an Administrative Law Judge. The Administrative Law Judge, hereinafter referred to as the ALJ, considered the plaintiff's claim *de novo*, and on September 29, 1976, found that the plaintiff was not entitled to disability insurance benefits. The Appeals Council received additional evidence and on February 18, 1977, denied review of the hearing decision, approving the findings of the ALJ. Accordingly, the ALJ's decision became the final decision of the Secretary, subject to judicial review by the district court. 42 U.S.C. § 405(g). This case is now before the court on the parties' cross-motions for summary judgment.

Because the Social Security Act confines the scope of judicial review to evidence within the Administrative record, motions for summary judgment are procedurally improper vehicles for a decision on the merits of the instant complaint. *Davis v. Califano*, 437 F.Supp. 978, 979 (N.D.Ill. 1977); *Brown v. Secretary of Health, Education and Welfare*, 403 F.Supp. 938, 940 (E.D.Wis.1975). Therefore, the court will treat the defendant's motion for summary judgment as a motion for an order affirming the Secretary's decision and the plaintiff's motion, as a motion for an order re-

versing the Secretary's decision. *Davis v. Califano, supra; Brown v. Secretary of Health, Education and Welfare, supra.* The major issue for determination by the court is whether the Secretary's decision is supported by substantial evidence. *Dvorak v. Weinberger,* 405 F.Supp. 1398 (N.D.Ill. 1975).

The plaintiff, Francesca Garcia, is a fifty year old woman with a third-grade education. The record indicates that she speaks, but neither reads nor writes Spanish and has but a limited ability to read and write English.

At the hearing, the claimant appeared unrepresented by counsel and upon inquiry by the ALJ, expressed her desire to proceed without an attorney. She was then simultaneously informed that she had the right to an attorney and that she was waiving that right.

In addition to the testimony of the claimant, her daughter, Gloria Jacobs, and a vocational expert, Philip Katch, the record contains various documents including medical reports by Dr. Robert C. Busch, Dr. James P. Ahstrom, Jr., Dr. Jorge O. Galante and Dr. James J. Migala. The reports of all doctors confirm that the claimant is suffering from spondylolisthesis of the L–4 and L–5 vertebra, with some forward displacement of L–4 on L–5.

On December 11, 1973, Dr. Robert C. Busch conducted both a physical and x-ray examination of Mrs. Garcia and diagnosed her condition as "bilateral lumbosacral sprain with sciatic radiation of spasm into both hips and down the posterior aspect of both thighs with bilateral sciatica and spondylolisthesis of L–4 and L–5." His physical examination revealed "tenderness and spasm on palpation and pressure over the lumbosacral and paravertebral areas bilaterally. . . . Weakness, stiffness and resistance to motion with spasm increased on motion in extremes."

In a section of his report entitled "Remarks: Findings resulting from the injury," Dr. Busch noted that the claimant had "residual complaints and disability, a source of discomfort for this patient," and charac-terized her condition as an industrial loss of "40% of the right leg and 40% of the left leg." No other interpretation of the objective medical findings was expressed.

In October of 1973, the claimant was treated at the Gottlieb Memorial Hospital for a disorder unrelated to the present claim. A report from the Department of Radiology of that institution indicates that Mrs. Garcia had "minimal spondylolisthesis between L–4 and 5" when she was admitted.

Mrs. Garcia was next examined on March 21, 1975, by Dr. James P. Ahstrom, who appears from the record to have been the Administration's consultant. His report indicates that a physical examination of the claimant revealed a tenderness "over the lumbosacral area and in each iliolumbar angle."

X-ray studies of the lumbosacral spine show sacralization of L5 on the right side and spondylolisthesis of L4 on L5 with . . . forward displacement of L4 on L5. There is an old wedging of D11 and 12 with some irregular borders of these bodies. The essential change consists of spondylolisthesis of the 4th lumbar vertebra.

Dr. Ahstrom characterized the claimant's condition as a "significant cause for back and leg pain." He expressed the opinion that it was "conceivable that an individual with this condition could pursue some type of activity of a sedentary or non-physical nature. It is not reasonable that she should be expected to engage in heavy physical activity such as bending, lifting, running or jumping." This is the only opinion expressed by Dr. Ahstrom in his written report relevant to the extent of the claimant's ability to engage in employment.

Subsequent to the hearing before the ALJ, the claimant was examined by Dr. Jorge O. Galante. Dr. Galante diagnosed her condition as chronic low back syndrome with sciatica and "spondylolisthesis L4–L5," finding that her "primary limitation stem[med] from severity of back pain." He also found that she was able to walk for one

hour during an eight hour work day and that she could sit for eight hours during that same period. It was his opinion that she had the use of both hands for simple grasping and fine manipulating.

Finally, Mrs. Garcia was examined by Dr. James J. Migala on October 18, 1976. This report, however, was not submitted to the ALJ until after his determination, but was considered by him in concluding that a change in his decision was not warranted. Dr. Migala also found spondylolisthesis and noted that the claimant "appeared to be disabled to the point where rehabilitation might be questionable."

At the hearing, the claimant herself testified that she could no longer work in or out of the home because of the pain she experienced. This was corroborated by the testimony of the claimant's daughter, Gloria Jacobs, who also testified that Mrs. Garcia was unable to remain in one position for any length of time.

Philip Katch, a vocational expert, testified at the ALJ's request. In response to three hypothetical questions "based upon several possible holdings [the ALJ could] make in this case," Katch testified that an individual with Mrs. Garcia's combination of impairments if found severely limited by arthritis of the right hand and spondylolisthesis, could perform no jobs. If she were found to be moderately limited, or mildly limited, however, there were certain jobs which she could perform within the Chicago area. After hearing the testimony of the vocational expert, the claimant testified that her pain prevented her from engaging in the activities described by Philip Katch.

 Upon this record, the ALJ found that the claimant was not disabled within the meaning of 42 U.S.C. § 423. The standard controlling this court's review is whether the Secretary's decision is supported by substantial evidence when the record is viewed as a whole. 42 U.S.C. § 405(g); *Moon v. Celebrezze,* 340 F.2d 926 (7th Cir. 1965). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402

U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

 A claimant is disabled within the meaning of the Social Security Act if he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and his impairment renders him unable to do his previous work as well as unable to engage in any other kind of substantial gainful employment. 42 U.S.C. § 423(d)(1)(A), (d)(2)(A); *Rayborn v. Weinberger,* 398 F.Supp. 1303, 1309 (N.D.Ind. 1975). The claimant has the initial burden of showing that he suffers from a medically determinable impairment and that he is unable to engage in substantial gainful employment. *Hassler v. Weinberger,* 502 F.2d 172 (7th Cir. 1974). Once this has been established, however, the burden shifts to the Secretary to prove that there is some other kind of gainful employment available which the claimant is able to perform. *Stark v. Weinberger,* 497 F.2d 1092, 1097–98 (7th Cir. 1974).

The record indicates, and the Secretary concedes, that the claimant has shown that her impairment prevents her from continuing in her former employment. Therefore the *fact* of the claimant's physical impairment, at least as it relates to her back condition, is not in dispute. It is rather the severity of the impairment and the extent to which it limits her ability to engage in other employment that is in question.

The ALJ found that the "claimant's back impairments and arthritic right hand limit her only moderately" and do not prevent her from engaging in employment of a sedentary or light nature. Although the ALJ did not indicate precisely what medical evidence required this decision, he appears to have placed considerable emphasis upon Dr. Ahstrom's statements submitted in a written report and upon an exhibit entitled "Report of Contact" purportedly prepared and signed by one Matt Terstriep. The plaintiff contends that neither statement,

alone or in combination with the other, constitutes substantial evidence to support the Secretary's decision. The court agrees.

When the record is viewed as a whole, it is clear that all doctors consulted, including the administration's, concur that the claimant's condition is a source of pain for her. The court, however, does not find substantial evidence in the record to support the ALJ's determination that the claimant has the ability to perform a job in which she would be permitted to sit, or that the claimant is able to lift up to ten pounds *frequently* and can walk or stand six to eight hours daily.

■ Dr. Ahstrom's statement that "it is *conceivable* that an *individual* with this condition could pursue some type of activity of a sedentary or non-physical nature," must be given little weight. (Emphasis supplied). It is not a positive opinion, and is inherently speculative. *See Allen v. Weinberger,* 552 F.2d 781 (7th Cir. 1977). More importantly, it does not apply directly to the claimant, but rather to "an individual" with the claimant's condition. As such, it ignores what Dr. Ahstrom himself concluded, that the claimant's condition is a significant cause of back and leg pain. How such pain affects *this claimant's* capacity, not the average individual's, is a question, the answer to which is central to a determination of her capabilities. "What one human being may be able to tolerate as an uncomfortable but bearable burden may constitute for another . . . a degree of pain so unbearable as to subject him to unrelenting misery of the worst sort." *Ber v. Celebrezze,* 332 F.2d 293, 299 (2d Cir. 1964).

In addition to Dr. Ahstrom's recognition that the claimant's condition was a significant cause of pain, Dr. Busch noted it as a "source of discomfort," Dr. Galante described the claimant's primary limitation as stemming from "severity of back pain," and Dr. Migala, in his report dated December 14, 1976, although not referring specifically to the claimant's pain, indicated that she "appeared to be disabled to the point where rehabilitation might be questionable." At the hearing, Mrs. Garcia testified that she was in constant pain and that severe back pain prevented her from remaining in one position for very long, and from performing simple household tasks, such as mopping and sweeping. Pain pills offered but limited relief. The claimant also indicated that she was experiencing pain during the hearing itself. Additionally, the claimant's daughter, Gloria Jacobs, testified that her mother could not remain in a sitting, standing or reclining position for any length of time, but instead had to alternate positions.

■ The medical evidence in the record is probative of the claimant's assertion that her condition of spondylolisthesis causes severe and disabling pain. Such evidence, under the circumstances of this case, is essential to the resolution of the issue of disability. *Taylor v. Gardner,* 297 F.Supp. 743, 746 (N.D.Ill.1969). Pain, standing alone, may constitute a disabling condition under the Act. *Baerga v. Richardson,* 500 F.2d 309, 312 (3rd Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975); *Talifero v. Califano,* 426 F.Supp. 1380, 1389 (W.D.Mo.1977). Subjective evidence of pain, therefore, must be accorded serious attention in the process of evaluating the total evidence. *Atkins v. Califano,* 446 F.Supp. 1017, 1020 (N.D.Ill.1978).

Although the ALJ set forth in his opinion, general standards applicable to the weight of the claimant's subjective complaints of pain, no specific findings were entered respecting the credibility of her complaints, nor are there any statements in the opinion from which the court is able to conclude that the claimant's complaints were rejected. Similarly, no direct findings were made as to the effect of the claimant's subjective pain on her ability to work. If the claimant's complaints of pain are true, her ability to perform sedentary work is questionable. *See Talifero v. Califano, supra; Wilson v. Weinberger,* 398 F.Supp. 1071 (E.D.Pa.1975).

■ The court will not speculate concerning the ALJ's possible findings of credibility. *E. g., Wilson v. Weinberger, supra.* When, as here, this issue is central to a

determination of disability, remand of the case for additional administrative findings is proper. *Wilson v. Weinberger, supra; Candelaria v. Weinberger,* 398 F.Supp. 613 (E.D.Pa.1975). For this and other reasons, however, the court has concluded that the prudent course to follow is to remand the case in its entirety for a new hearing. Accordingly, the remaining evidence which the Secretary contends is substantial support for the ALJ's decision, will be examined.

■ As the court has noted, in contrast to evidence which relates directly to the plaintiff's claims of severe and disabling pain, Dr. Ahstrom's speculative statement cannot be according much weight. Nor does Exhibit 17, entitled "Report of Contact" consist of substantial evidence to support the Secretary's conclusion. This document is handwritten and purports to be a memorial of a communication between Dr. Ahstrom and an unidentified individual. It is signed by one Matt Terstriep. The text of that document, with the obliterations omitted, recites:

> Dr. Ahstrom—applicant can lift frequently up to 10 lbs and can walk, or stand six to eight hours with intermittant [sic] rest periods. Assembly line work is acceptable as long has [sic] intermittant [sic] periods of sitting are included in the days work.

The United States Supreme Court has held that a "written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . despite its hearsay character . . . may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant . . . ." *Richardson v. Perales, supra* at 402, 91 S.Ct. at 1428. Exhibit 17, upon which the ALJ relied in making his determination, however, does not fall within this description. It has none of the features noted by the Court. It was not prepared by Dr. Ahstrom himself. It is not a medical report. It appears to have been prepared approximately one week after the preparation of Dr. Ahstrom's written report and two

weeks after his examination of the claimant. As such, it cannot be considered as part of the written report.

In holding that medical reports of examining physicians could constitute substantial evidence in support of a hearing examiner's findings, the Supreme Court noted a number of factors which assured the underlying reliability and probative value of such reports. *Richardson v. Perales, supra* at 402–406, 91 S.Ct. 1420. Exhibit 17, however, carries on its face, certain indicia of un-reliability which cannot be ignored. The date of *contact* is recorded as April 5, 1975, while the date the substance of such contact was purportedly memorialized is shown as April 4, 1975, one day *before* the communication allegedly occurred. It is therefore unclear from the report when *either* event took place. Of more importance, however, is the apparent inconsistency between Dr. Ahstrom's written and signed report and the Report of Contact which the Secretary characterizes as amplification of the written report.

■ On March 26, 1975, in his written report, Dr. Ahstrom observed that it was not reasonable that the claimant "should be expected to engage in heavy physical activity *such as* bending, *lifting,* running or jumping." (Emphasis added). On April 5, 1975, according to Exhibit 17, Dr. Ahstrom, by telephonic communication, stated that the "applicant can *lift frequently* up to 10 lbs." (Emphasis added). The discrepancy between the two statements cannot be reconciled from the face of the documents nor by reference to the other medical reports in evidence without engaging in speculation, which this court cannot do. Of the written reports submitted by the four examining physicians, only one, that of Dr. Galante, set forth an opinion on the claimant's ability to lift objects. He found that the claimant could *never* lift any amount of weight. This opinion was rejected by the ALJ as unsupported by evidence in the record. The only evidence contrary to this opinion, however, is Exhibit 17, the "Report of Contact," and the claimant's own evaluation of her physical capacities submitted on the Admin-

istration's form. Although the ALJ may weigh conflicting evidence, he cannot ignore its inadequacies. *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir. 1974).

The court recognizes that evidence may be received at an administrative hearing even though it is inadmissible under the rules of evidence which control judicial proceedings. 20 C.F.R. § 404.928. The weight to be attached to such evidence, however, must be considered in light of its deficiencies. *See Allen v. Weinberger, supra* at 786. The evidence must also be that which a reasonable man would consider supportive of the final decision rendered. *Richardson v. Perales, supra,* at 401, 91 S.Ct. 1420; *Talifero v. Califano, supra* at 1387, n. 17.

In view of the deficiencies of Exhibit 17, indicated by the court, it cannot be said that the controlling standards are satisfied or that this exhibit constitutes substantial evidence to support the Secretary's decision, either alone or in combination with the statement of Dr. Ahstrom in his written report which the court has previously discussed, or with the claimant's own evaluation of her capabilities.

This evaluation consisted of a completed form published by the Administration, in which the claimant indicated that she had the ability to lift up to twenty pounds *"occasionally"* during an eight hour work day. She did not state, however, that this activity could be performed *"frequently."* The terms are separate and distinct. There is a wide range of meaning both within and between the two definitions as they are set forth on the Administration's form. The term "occasionally" is defined as equal to 0% to 33% of an eight hour work day, while the term "frequently" encompasses 34% to 66% of that same time period. By the Administration's own definition, therefore, the term "occasionally" can mean a capacity of 0%, or in other words, an inability to perform the task of lifting during an eight hour work day. The claimant was never asked, nor does her testimony reveal in what sense she used the term to describe her ability.

Based upon the Administration's seemingly self-contradictory definition and the claimant's choice of the term "occasionally," the court does not find her statement helpful in resolving the conflict between the two reports purporting to set forth the observations of the administration's consultant. For the same reason, the court does not regard this evidence as controlling on the claimant's abilities to engage in the described activities. The only remaining evidence indicative of the claimant's capacity to work, other than her own testimony, is Dr. Galante's statement that she could sit for eight hours and had the use of her hands for simple grasping and light manipulating.

Standing alone, Dr. Galante's statement that the claimant could sit for eight hours, is without sufficient detail to support the ALJ's conclusion. *Landess v. Weinberger, supra* at 1189. This statement appeared as an answer on the Administration's questionnaire, and without more explanation is entitled to little weight, especially in light of Dr. Galante's notation on that same form that the claimant's primary limitation stemmed from *severity of back pain.* The report is silent as to whether Dr. Galante considered Mrs. Garcia's severity of pain in his response related to her capacity to sit.

Although the ALJ may weigh conflicting evidence, he cannot do so by ignoring competent evidence in the record which suggests an opposite conclusion. *Rayborn v. Weinberger,* 398 F.Supp. 1303, 1311 (N.D.Ind.1975). Nor can a reviewing court isolate a specific quantum of supporting evidence to affirm the ALJ's findings. It must instead consider the record as a whole. *Stark v. Weinberger, supra* at 1099; *Talifero v. Califano, supra* at 1387; *Rayborn v. Weinberger, supra* at 1311. When the evidence which detracts from the ALJ's conclusion is viewed together with Dr. Galante's statement, which tends to support the ALJ's conclusion, the court is unable to hold that this statement constitutes substantial evidence. The court will not, however, make an initial determination that the claimant has proved her entitlement to dis-

ability benefits. As was noted earlier, such a finding necessarily requires an assessment of Mrs. Garcia's credibility, a task which is outside the province of this court. The court is also of the opinion that evidence, directly probative of the severity of the claimant's condition must be developed. This is especially important when the record contains evidence that the claimant can sit for eight hours, and has the use of both hands. Such evidence presents sufficient evidentiary questions to preclude an outright ruling in Mrs. Garcia's favor. *See Gudlis v. Califano,* 452 F.Supp. 401, 407 (N.D.Ill.1978); *Mullen v. Gardner,* 256 F.Supp. 588 (E.D.N.Y.1966).

The court agrees that there is objective medical evidence in the record to establish that the claimant suffers from spondylolisthesis.

However, a recitation of objective, clinical findings will seldom show, without more, the over-all effect of these impairments on a particular individual. This is a matter of medical judgment to be decided with reference to the individual's general physical condition and the state of development of each of the defects. The expert medical opinion of treating or examining physicians on these subsidiary questions of fact will in most cases be essential in determining with respect to a particular individual the severity of an objectively determinable physical impairment.

*Underwood v. Ribicoff,* 298 F.2d 850, 851 (4th Cir. 1962).

Finally, there is a dearth of evidence in the record to support the claimant's assertion that her right hand is arthritic and cannot be used. Contrary to the ALJ's observation that "[t]he examining doctors in this case were in agreement that claimant could use her hands for simple grasping and fine manipulating," Dr. Galante is the only one who even mentioned the claimant's hands. There is, however, no evidence that he or any other reporting physician, examined the claimant's right hand. The substance of all medical reports submitted is confined solely to the claimant's back condition. There is no evidence in the record other than the claimant's own statement, which is probative of the fact that Mrs. Garcia's right hand is arthritic.[1]

■ Statements by the claimant as to the nature and extent of an impairment are insufficient to establish its existence. This must be done by acceptable medical evidence. *Stark v. Weinberger, supra* at 1097. This impairment, therefore, has not been proved.

It is clear, however, from the ALJ's opinion and the hypothetical questions put to the vocational expert, that the extent to which the claimant could use her hands was important to his conclusion that she was not under a disability. Her back condition was considered by the ALJ both alone and in combination with her arthritic hand, in spite of the absence of any evidence establishing that she suffered from arthritis or evidence revealing the severity of this impairment. All hypothetical questions assumed, in varying degrees, the existence of arthritis.[2] Yet the ALJ made no inquiry of substance in an attempt to ascertain the facts relevant to this issue.

---

1. The court does not consider the "examination" of the claimant's hand, conducted by the ALJ during the hearing, as probative, in any manner, on this issue. *See e. g., Gudlis v. Califano, supra* at 407.

2. In absence of any evidence establishing arthritis or substantial evidence to support the ALJ's assumption that the claimant was "moderately limited" by her impairments, the vocational expert's testimony in response to the hypothetical questions, is without probative force on the question of Mrs. Garcia's disability. *See Allen v. Weinberger, supra* at 786, n.3.

The court also has grave doubts as to the probative value of testimony based on hypothetical assumptions which cover, as here, the same physical conditions, but rest in the main, upon categorical levels of limitation—"severely limited," "moderately limited," and "mildly limited." *See Wilson v. Weinberger, supra.* The answers to such questions do not develop the realities of the particular individual's capacity to work and are often divorced from the totality of the circumstances. *Cf. Atkins v. Califano, supra.*

The Seventh Circuit has recognized the important role the Administrative Law Judge plays in the development of a full and fair record. *E. g., Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857 (1978). "While hearings on disability claims are not adversary proceedings, . . . where the disability benefits claimant is unassisted by counsel, the ALJ has a duty ' "scrupulously and conscientiously [to] probe into, inquire of, and explore for all relevant facts . . . ." ' " *Smith v. Secretary of Health, Education and Welfare, id.* at 860. This duty was not met here.

It is apparent from the record that the claimant faced a language barrier which, at times prevented her from testifying effectively or challenging adverse evidence. This is demonstrated throughout the record. Even the documents in evidence were admitted under such circumstances.

*ALJ*: You've gone through those records before the hearing today, and I ask you at this time, Mrs. Garcia, if you have any objections to my relying upon them in making my decision to the extent that I find it necessary?

Just a moment ladies. We'll conduct the hearing with English as far as we can go.

*CLAIMANT*: Okay.

*ALJ*: This is our mother tongue in the country and we must try as best we can to conduct these hearings. The judge does not have the privilege of being fluent in Spanish.

Do you have any objection if I make these part of the record? Do you understand that?

*CLAIMANT*: If I had what you say?

*ALJ*: Do you want me to make these part of the record, these medical reports and other documents? So that I can read them?

*CLAIMANT*: Do you want to read it?

*ALJ*: I would like to read it.

*CLAIMANT*: Sure.

*ALJ*: I want your permission. It's okay?

*CLAIMANT*: Sure.

*ALJ*: Very good, okay. The documents marked for identification as 1 through 24 will be admitted into the record at this time.

(Record, 34–35).

It also appears that the ALJ did not develop, to sufficient degree, the evidence as it relates to the severity of the claimant's back condition. "[N]aked conclusions and opinions by medical experts are often subject to reserved and unwritten qualifications requiring searching evaluation." *Landess v. Weinberger, supra* at 1189.

Given the limited educational background of the claimant, her difficulty with the English language, her corroborated complaints of pain, the absence of evidence relating to her arthritis, and the deficiencies noted by the court in the evidence presented, "it was incumbent upon the ALJ to emphasize the desirability of producing, and to afford an opportunity to produce expert testimony, as to her medical disabilities and their effect on her capacity to engage in substantial, gainful work within the meaning of the Act." *Smith v. Secretary of Health, Education and Welfare, supra* at 861. This was not done. It is the court's opinion, in light of the record, that the claimant should be given the opportunity to establish all aspects of her claim. *See e. g., Landess v. Weinberger, supra; Talifero v. Califano, supra; Mullen v. Gardner, supra.*

█ Therefore, although the court does not find the record developed to an extent where it is able to determine that the claimant is disabled, neither does it find substantial evidence to support the Secretary's decision. Accordingly, the defendant's motion for summary judgment, which the court has treated as a motion for an order affirming the Secretary's decision will be, and the same hereby is denied. The plaintiff's motion for summary judgment, which the court has treated as a motion for an order reversing the Secretary's decision will be, and the same hereby is granted.

Upon the foregoing, it is ordered that the Secretary's decision denying the claimant, Francesca Garcia, disability benefits will be and the same hereby is reversed.

It is further ordered that this case is remanded to the Secretary of Health, Education and Welfare for a new hearing before a different Administrative Law Judge at which both parties may present evidence and for further proceedings consistent with this opinion.