Court Exhibit 1

Manuel REGINO CAVAZOS, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. CIV. 1:00CV203.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 7, 2000.

Joseph W. Shull, Fort Wayne, IN, for Manuel Regino Cavazos, Plaintiff.

Deborah M. Leonard, United States Attorneys Office, Fort Wayne, IN, for Kenneth S. Apfel, Commissioner, Defendant.

### *ORDER*

COSBEY, United States Magistrate Judge.

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits as provided for in the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1382c. Section 205(g) of the Act provides, *inter alia,* "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of·are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff,* 307 F.2d 840 (4th Cir.1962), *cert. denied,* 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); *Garcia v. Califano,* 463 F.Supp. 1098 (N.D.Ill.1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson,* 445 F.2d

36 (7th Cir.1971); *Kutchman v. Cohen,* 425 F.2d 20 (7th Cir.1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker,* 732 F.2d 605, 607 (7th Cir.1984) *citing Whitney v. Schweiker,* 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler,* 737 F.2d 714, 715 (7th Cir.1984)(quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *see Allen v. Weinberger,* 552 F.2d 781, 784 (7th Cir.1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. § 405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schmoll v. Harris,* 636 F.2d 1146, 1150 (7th Cir.1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.  The claimant met the disability insured status requirements of the Act on June 2, 1997, the date the claimant stated he became unable to work, and has acquired sufficient quarters of coverage to remain insured through at least September 30, 2002.

2.  The claimant has not engaged in any disqualifying substantial gainful activity since June 2, 1997.

3.  The medical evidence establishes that the claimant has primary degenerative disc disease and prostate cancer, which is in remission, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the reports of treating and examining practitioners. The claimant's own description of his activities and life style seem to be out of proportion with the medical evidence.

5.  The claimant lacks the residual functional capacity to lift and carry more than 20 pounds occasionally, or more than ten pounds frequently, as well as climbing, balancing, kneeling and crouching only occasionally, with no climbing ropes, ladders, scaffolds or crawling, and the need to avoid concentrated exposure to extreme cold, heat, hazardous machinery and unprotected heights.

6.  The claimant is unable to perform his past relevant work as a welder (production), foundry worker and grinder/chipper.

7.  The claimant's capacity for the full range of light work is somewhat diminished by his non-exertional limitations.

8.  The claimant is 52 years old, an individual "closely approaching advanced age."

9.  The claimant has a marginal education.

10.  The claimant has unskilled and semiskilled work experience.

11.  Based on an exertional capacity for light work, and the claimant's age, educational background, and work experience, Sections 404.1569 and 416.969 and Rules 202.10 and 202.11 Table 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

12.  Although the claimant is unable to perform the full range of light work, he is capable of making an adjustment to work which exists in significant numbers in the national economy. Such work includes employment as a sales attendant, cleaner, greeter retail, and assembler of small parts. A finding of "not disabled" is therefore reached within the framework of the above-cited rules.

13. The claimant has shown that he has the capabilities needed to do lighter work.

14. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 8P–8Q). Based upon these findings, the ALJ determined that the plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review on March 9, 2000. This appeal followed.

The plaintiff filed his opening brief on August 31, 2000. The Commissioner filed his response on October 16, 2000, to which the plaintiff replied on October 30, 2000. After obtaining leave of court, the Commissioner filed a response to the plaintiff's reply on November 8, 2000, to which the plaintiff filed his final reply on November 15, 2000.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen,* 841 F.2d 710, 711 (7th Cir.1988); *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen,* 855 F.2d 503, 504 n. 2 (7th Cir.1988); *Zalewski v. Heckler,* 760 F.2d 160, 162 n. 2 (7th Cir.1985); *accord Halvorsen v. Heckler,* 743 F.2d 1221 (7th Cir.1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

The plaintiff initially applied for benefits on July 28, 1997, claiming that he became disabled as of July 20, 1995, due primarily to prostate cancer and degenerative disc disease. The plaintiff also alleges that he is qualified for benefits under the "worn-out worker" rule. The plaintiff's applications were denied initially and on reconsideration. On March 25, 1998, the plaintiff requested a hearing and on August 11, 1998, the plaintiff appeared and testified before ALJ Eric Fine. A friend of the plaintiff, Rick Vitatoe, testified at the hearing, as did a vocational expert, R. Barkhaus. On September 22, 1998, the ALJ determined that the plaintiff was not disabled because he could perform a significant number of light jobs. The Appeals Council denied the plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

The plaintiff was born on January 10, 1946, and was fifty-two years old at the date of the hearing. The plaintiff attended school through the sixth grade in Mexico. The plaintiff worked in Sterling Castings Foundry in Indiana for approximately 26 years as a welder, foundry worker, and grinder/chipper. Prior to that, the plaintiff had worked as a construction worker, in another foundry, as a gas station attendant, as a stocker in a store, and as a farm worker.

The plaintiff's impairments include low back pain after two-level lumbar laminectomies and hemilaminotomy, radical prostatectomy with ongoing hormonal ablation therapy, and mood disorder associated with medical problems.

The ALJ found that the plaintiff had not engaged in substantial gainful activity, and had severe impairments in the form of degenerative disc disease and prostate cancer. The ALJ further found that the plaintiff lacked the residual functional ca-

pacity to lift and carry more than 20 pounds occasionally, or more than 10 pounds frequently, as well as climbing, balancing, kneeling and crouching only occasionally, with no climbing ropes, ladders, scaffolds or crawling, and the need to avoid concentrated exposure to extreme cold, heat, hazardous machinery and unprotected heights. The ALJ found that the plaintiff was unable to perform his past relevant work. Based on the plaintiff's exertional capacity for light work and his non-exertional limitations, the ALJ found that the plaintiff was "not disabled". The ALJ also found that the plaintiff did not meet the "worn out worker" rule set out in 20 CFR Sections 404.1562 and 416.962 [1] for two reasons. First, the ALJ found that the plaintiff did not meet the requirement of 35 years of arduous work [2] as his three years as a grinder were medium work. Second, the ALJ apparently found that the plaintiff's education level is higher than marginal based on his work as a grinder, his testimony, and his performance in his psychological evaluation, although the ALJ's decision is contradictory on this point.

The plaintiff disputes only the ALJ's finding that he does not meet the worn-out worker exception. The plaintiff argues that the ALJ erred in finding that the coal room work was medium and not arduous work and, even if the coal room work was excluded, the plaintiff has enough arduous work in his work record to meet the re-quirement. The plaintiff also argues that his performance on the psychological evaluation and his three-year stint as a grinder does not overcome the presumption that his education is marginal.

With respect to the requirement of 35 years of arduous unskilled work, the plaintiff alleges that he performed 26 years of arduous heavy work at Sterling Casting, 3 years of which was coal room work. The plaintiff states that he also worked at another foundry job for 8 months, as a construction worker for 6 months, and as a stocker in a store for a year. The plaintiff claims that all of these jobs involved lifting and carrying objects. The plaintiff also states that he performed farm work from the age of 6 to the age of 23, which work should be considered arduous.

The ALJ's discussion of the plaintiff's work history is as follows:

> The claimant's testimony revealed that he began working at Sterling Casting in 1972. The vocational expert classified all work performed there as heavy or very heavy from 1983 and thereafter. (Exhibit 10E). Claimant testified that he worked in the coal room from 1972 to 1975, where he was lifting between five to fifty pounds. Claimant testified that he began working in the grinding room in 1985, where he was grinding castings. He testified that he was able to start work there right away, with no training. While the vocational expert testified that the work there was unskilled, the Dictio-

---

1. The relevant portions of these sections state:

   If you have only a marginal education and work experience of 35 years or more during which you did arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s) we will consider you unable to do lighter work, and therefore disabled. However, if you are working or have worked despite your impairment(s) (except where the work is sporadic or is not medically advisable) we will review all the facts in your case and we may find that you are not disabled. In addition, we will consider that you are not disabled if the evidence shows that you have training or past work experience which enables you to do

   substantial gainful activity in another occupation with your impairment, either on a full-time or a reasonable regular part-time basis.

2. "Arduous work" is defined in Social Security Ruling 82–63 as follows: Arduous work is primarily physical work requiring a high level of strength or endurance. No specific physical action or exertional level denotes arduous work. While arduous work will usually entail physical demands that are classified as heavy, the work need not be described as heavy to be considered arduous. For example, work involving lighter objects may be arduous if it demands a great deal of stamina or activity such as repetitive bending and lifting at a very fast pace.

nary of Occupational Titles (DOT) has it rated with an Specified Vocational Preparation (SVP) of 3, which is at the low end of semi-skilled. Similarly, claimant testified that when he went into the welding shop, he could perform that job right away with no "on-the-job" training. He stated that he knew how to weld as he had seen someone else do the job. The welder job has an SVP of 2, or unskilled.

Claimant testified that when he first moved to Fort Wayne in 1970 he worked as a general laborer for 8 months, spreading cement floors. He testified that he also worked in a foundry for six months as a molder, wherein he was lifting up to 150 pounds. Before coming to Ft. Wayne, claimant worked in Texas for four months pumping gas, and cleaning up. This work was done at the light level, and it took place in 1970. Claimant states that prior to leaving Mexico, he worked in a store for about a year, where he was lifting up to 100 pounds stacking shelves. He performed other lighter work while doing this job. Claimant stated that as of age seventeen, he was working for his father on a farm. He reported that he was cutting corn and picking tomatoes, and that he was lifting up to 20 pounds. The vocational expert testified that this was light work, as performed by the claimant but that it would require a great deal of stamina, in view of the constant picking and carrying of objects.

With respect to the "worn out worker" exception: claimant worked from 1972 to 1975 where he was working at the medium level lifting between five and fifty pounds. He failed to establish that this work would meet he requirements of the arduous work rule.

(Tr. 8N).

While the decision is not totally clear, it appears that the ALJ was basing his decision that the plaintiff did not meet the 35 year requirement on the assumption that the coal room work the plaintiff performed between 1972 and 1975 was not arduous work, and thus the plaintiff did not perform 35 years of arduous work.

■ As noted, the plaintiff disputes the ALJ's finding that the coal room work was not arduous work, as performed by the plaintiff. The plaintiff testified that in the coal room he bent all day from 300 to 400 times picking up cores weighing from 5 to 50 pounds. (Tr. 314, 336–37). The plaintiff thus argues that the coal room work meets the definition of "arduous" because it involved repetitive bending at a very fast pace. The plaintiff correctly notes that the definition of "arduous" work involves no specific physical action or exertional level. Thus, although work classified as "heavy" is usually considered "arduous", work involving lighter objects may be arduous if it demands a great deal of stamina or activity such as repetitive bending or lifting at a very fast pace. *See* Social Security Ruling 82–63. However, the ALJ completely failed to take the repetitive, fast paced nature of the coal room work into account in considering whether it met the definition of "arduous work".

The plaintiff also points out that the ALJ did not make specific findings that the work the plaintiff performed in Mexico was not arduous. The plaintiff testified that he worked in a grocery store for about a year, where he was lifting up to 100 pounds stocking shelves. The ALJ failed to articulate whether he was considering this work to not be arduous work and, if so, what would be the basis for such a classification. Additionally, the ALJ completely failed to indicate the basis for only considering the plaintiff's farm work performed after age sixteen [3]. The plain-

---

**3.** One must keep in mind the cultural differences involved in this case. Whereas American children may not often perform arduous work prior to the age of sixteen or seventeen, this may not be case with respect to Mexican children, especially during the time-frame in question (i.e. the 1950's and 1960's).

tiff testified that he performed farm work from age 6 to age 23. (Tr. 345). The vocational expert testified that the farm work performed by the plaintiff would require a great deal of stamina. Therefore, according to the definition of "arduous work" (which includes work involving lighter objects if it demands a great deal of stamina), the only evidence in the record is that the plaintiff's farm work constituted "arduous work". Yet, the ALJ failed to articulate in his decision why he did not find the farm work to be arduous work. In light of all of these deficiencies in the ALJ's decision with respect to whether the plaintiff performed arduous work for at least 35 years, this court finds that a remand for further consideration is necessary.

The second prong of the "worn out worker" rule requires that the plaintiff have only a marginal education. The ALJ's decision is quite confusing on this point. The ALJ correctly notes that an individual is considered to have a marginal education if he or she has no more than a sixth grade elementary school education. It is undisputed that the plaintiff has no more than a sixth grade education. The ALJ then proceeds to discuss the plaintiff's cognitive abilities, concluding that the plaintiff "had obtained a level of development and reasoning which would allow him to perform more than unskilled work." (Tr. 8O). The ALJ then found the plaintiff to not be disabled. However, on the next page of his decision, at finding No. 9, the ALJ states "The claimant has a marginal education." (Tr. 8P). Therefore, it appears that the ALJ determined that the plaintiff met the second prong of the "worn out worker" rule. Yet, the ALJ did not specifically discuss the second prong of the "worn out worker" rule, perhaps because he had already dismissed the plaintiff's arguments with respect to the requirement of 35 years of arduous work. In any event, it is clear that the ALJ needs to reconsider whether the plaintiff qualifies as a "worn out worker". Therefore, this case will be remanded for further proceedings.

*Conclusion*

On the basis of the foregoing, this case is hereby REMANDED to the ALJ for proceedings consistent with this opinion.